Tommy **MOTHERSHED,** Appellant,

v.

**STATE of Tennessee,** Appellee.

Court of Criminal Appeals of Tennessee.

Aug. 31, 1978.

Certiorari Denied by Supreme Court
Dec. 4, 1978.

Richard J. Ryan, Jr., and Richard J. Ryan, Sr., Memphis, for appellant.

Brooks McLemore, Jr., Atty. Gen., John F. Southworth, Jr., Asst. Atty. Gen., Nashville, A. H. Schoonover and Theodore H. Neumann, Asst. Dist. Attys. Gen., Trenton, for appellee.

DAUGHTREY, Judge.

## OPINION

The defendant-appellant, Tommy Mothershed, was convicted of raping a 79 year old woman. In addition the jury found that he was guilty of using a firearm in the

commission of this felony, and Mothershed was sentenced to 40 years imprisonment for the rape, enhanced by a one to five year term on the firearms charge. On appeal the defendant raises multiple assignments of error concerning (1) his claim of insanity at the time of the offense and his alleged incompetency to stand trial; (2) the State's failure to provide an impartial jury to hear his case; (3) the sufficiency of the proof to support the jury's verdict; (4) the trial court's failure to suppress certain evidence seized from the defendant's home and the court's failure to suppress the victim's line-up identification of the defendant; and (5) an apparent violation of the sequestration order entered by the trial judge at the beginning of the trial. We find no error so serious as to require a new trial and, accordingly, we affirm the conviction.

The issues of sanity and competency were first raised by defense counsel by means of pre-trial motions requesting a psychiatric evaluation. The defendant was examined on two or three separate occasions at two county mental health facilities. One of the examining psychiatrists testified at trial that she interviewed Mothershed and found no evidence of mental illness. Her initial report was also introduced into evidence. It shows the defendant to be "manipulative," but suffering from no mental illness or defect. It appears that the second evaluation likewise failed to show any indication of an existing mental deficiency or insanity at the time of the offense.

The defendant made no direct claim of insanity. His defense appeared to be based on misidentification; when Mothershed was asked at trial about his whereabouts on the day of the rape, he recited his activities in great detail—except for the crucial three hour period during which the rape and several related incidents occurred. Asked about this interval, the defendant replied, "I told the jury what I know about that day. If there's a gap there, there's a gap there. But that's the way the day went for me." Significantly, Mothershed did not testify that he could not remember what occurred during this period, although he did say he could not recall ever having seen the weapon allegedly used during the rape and later found in his attic.

The only proof offered to substantiate Mothershed's claim of insanity was testimony offered by several members of his family and a former co-worker; they described Mothershed as a loner, often "down" or depressed, sometimes given to violence, prone to change jobs frequently, and generally unable to get along with other people. All of these lay witnesses offered their opinion that the defendant could benefit from "professional help," but there was no evidence that he had ever sought or received treatment for his "emotional problems."

■ We think the evidence shows the defendant to be a mean and highly emotional person. But there is no evidence that he was legally insane at the time of the offense nor that he was incompetent to stand trial. The jury's special finding of sanity was therefore fully justified by the proof. Furthermore, the trial judge committed no error in refusing to continue the trial to allow evaluation by a private psychiatrist at state expense. *Graham v. State*, 547 S.W.2d 531 (Tenn. 1977). The State concedes, and we find, that the trial court erred in charging the jury on the defense of insanity while not at the same time complying with clear mandate of T.C.A. § 33–709(e) that he also instruct the jury "that a verdict of not guilty by reason of insanity . . . shall result in automatic detention of the person so acquitted in a mental hospital or treatment center." However, we conclude that this error does not require reversal, because in the absence of a prima facie showing of insanity, we find the proof to be such that the jury could not reasonably have found the defendant to be other than sane. It follows that the failure to charge the jury under T.C.A. § 33–709(e) did not affect the outcome of the trial, and the error must be deemed harmless. T.C.A. §§ 27–116 and 27–117. The various assignments related to issues of competency and insanity are overruled.

■ The defendant next charges that the trial court erred in failing to grant his motion for change of venue, which was made during the voir dire of the jury when it developed that several of the prospective jurors had formed strongly held opinions as to Mothershed's guilt or innocence, based on what had appeared in local news stories, as well as on general knowledge in the community. We find no abuse of discretion in the trial court's failure to declare a mistrial at this point in the proceedings. Prospective jurors who said that they could not lay aside previously formed opinions were excused by the court. We think it would have been preferable had the trial judge also excused those who, after considerable "rehabilitation" by the court, said only that they would "try" to lay aside such opinions but expressed no self-confidence in their ability to do so. *See generally Murphy v. Florida*, 421 U.S. 794, 799–800, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). However, the prospective jurors who fell into this category were in fact excused peremptorily by the defendant. If he had exhausted his peremptory challenges in this effort we might be persuaded to weigh more heavily his contention that the resulting jury was biased. But the defendant did not exhaust his peremptory challenges and made no effort to renew his motion before accepting the jury as finally constituted. We therefore find no error, under the authority of *Sommerville v. State*, 521 S.W.2d 792 (Tenn. 1975), and *Tittsworth v. State*, 503 S.W.2d 523 (Tenn.Cr.App. 1973), and the assignment is overruled.

■■ The defendant next challenges the sufficiency of the evidence on the ground that proof of penetration was improperly adduced by means of leading questions. Although it appears that in some instances the form of the questions to which the defendant objected called for a simple yes or no answer, this fact in itself is not sufficient to make the question "leading," *i. e.* "one that suggests to the witness the answer desired by the examiner." E. Cleary, *McCormick on Evidence* § 6 (2nd ed. 1972). *See also* D. Paine, *Tennessee Law of Evidence*, § 160 (1974). Under Tennessee law,

the trial judge has wide discretion in controlling the form of questioning, and "unless [the appellate court] can see that the question was not only clearly leading but clearly prejudicial, the action of the [trial court] will not be interfered with . . ." *Hale v. State*, 198 Tenn. 461, 476, 281 S.W.2d 51, 58 (1955). We find no such prejudice in this case, and accordingly, the related assignment of error must be overruled.

■ The defendant further complains that there was no proof that a firearm was used as "a means of committing the crime" of rape, but only that a gun was observed by the victim at some point during the rape incident. The record clearly refutes this claim; the victim testified that her assailant said, " 'You do as I say' . . . [and he] showed me the gun . . . [and] said, 'We won't have any trouble.' " This assignment must likewise be overruled.

The defendant next contends that the trial court improperly permitted proof of other crimes to be introduced against him. The State responds that the evidence in question did not establish the commission of a crime and, in any event, that it was relevant to show a common scheme or pattern of behavior by the defendant from which the jury could properly infer that he committed the offense in question. Thus the State insists that any evidence related to another crime constitutes an exception to the general rule prohibiting proof of other offenses if used to prove the defendant's propensity for criminal behavior. *See generally Carroll v. State*, 212 Tenn. 464, 370 S.W.2d 523 (1963).

The elderly victim testified that the defendant first came to her door asking to use the telephone. He purportedly wished to call a Joe Davis, whose name the victim could not locate in the phone directory. The defendant then asked to use the bathroom, and she let him in the house. He stayed in the bathroom a long time and physically attacked her shortly after he came out. The State produced as witnesses three women who lived in the same general

area as the victim. All three identified the defendant as the person who came to their respective homes within a three hour period the same period of time as the rape for which Mothershed was on trial. In each instance the defendant first asked to use the phone to call a person (variously "Paul Jacobs," "Mutt Davis," "Joseph Davis") whose name could not be located in the phone book. The defendant was careful in each instance to ask about the witness' husband, in an obvious attempt to learn whether she was alone at the time. On all three occasions. when the defendant discovered that someone else was in the house, he quickly left. At one home, the gun later located in the defendant's house (and alleged by the State to have been used in the perpetration of the rape) was found to be missing shortly after the defendant was there. At another house, the defendant pulled "a big black gun" and tried to force his way into the witness's kitchen; but when the witness's daughter appeared, the defendant hurriedly left, threatening to return later.

◼ The defendant denied having ever seen the gun in question and, implicitly, denied responsibility for the rape with which he was charged. We conclude that the evidence in question was relevant and admissible to show his possession and guilty use of the weapon, his identity as the perpetrator of the subsequent rape, and his criminal responsibility for his acts. Because the evidence was introduced for this purpose, the fact that it may be viewed as tending to prove other criminal acts by the defendant is not controlling in this case; under these circumstances, the proof in question qualifies as an exception to the general rule. *Carroll v. State, supra* at 477–79, 370 S.W.2d 523. We find no error in its admission.

◼ The defendant next complains of the trial court's failure to suppress certain evidence which the defendant insists was introduced in violation of the Fourth and Sixth Amendments. Unfortunately for our purposes, the trial judge failed to give reasons for his rulings on the defendant's mo-

tions to suppress. However, it appears that the Court ruled that the two warrantless searches of the defendant's house were valid, based, in the first instance, on the consent of the defendant and, in the second instance, on the consent of the defendant's wife. Further, the trial judge, in overruling the defendant's motion to suppress the lineup identification by the victim, apparently found a waiver of the right to counsel at the procedure. (The defendant insisted that the waiver had been scratched out on the advice-of-rights form he signed prior to the lineup; the State's evidence indicated that the defendant chose not to make a statement, as indicated by the marks on the *Miranda* form, but that he had specifically waived his right to an attorney at the lineup after receiving oral advice that he was entitled to have an attorney present.) The evidence does not preponderate against these rulings, and, accordingly, the related assignments of error must be overruled. *State v. Chandler*, 547 S.W.2d 918 (Tenn. 1977); *Braziel v. State*, 529 S.W.2d 501 (Tenn.Cr.App. 1975).

◼ Finally, the defendant contends that the trial court erred in allowing a police officer to testify at the jury-out suppression hearing in violation of the sequestration order entered at the beginning of the trial. The court ruled that the officer was listed as the prosecuting witness on the indictment and was therefore not subject to "the rule." It has been held that the "attorney for the state has the right to such assistance as the prosecutor can give him in the management of the state's case, and, upon his request, it is not error to permit the prosecutor to remain in the courtroom after the rule has been called for . . ." *Smartt v. State*, 112 Tenn. 539, 551, 80 S.W. 586, 588 (1904). However, the opinion in *Smartt* also notes that "the court should impose as a condition that the state, if it desires to use the prosecutor as a witness, should examine him first." *Id.* We think the rule in *Smartt* is a reasonable limitation on the provision of T.C.A. § 24–106 which purportedly exempts parties from the operation of a sequestration order. We thus

find a technical error in this case, as did the court in *Smartt*; but, like that court, we also conclude that "[no] substantial injury was done to the defense . . . in the court below by such action . . . [and therefore] it cannot be treated as reversible error in the present case." *Id.* The assignment is therefore overruled.

 Separate judgments were entered in this case with respect to the rape and firearms convictions. The case must therefore be remanded for modification of the judgment in conformity with the instructions laid down by Mr. Justice Brock in *State v. Hudson*, 562 S.W.2d 416, 420 (Tenn. 1978).

Affirmed and remanded for modification.

O'BRIEN, and BYERS, JJ., concur.