## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

### AT KNOXVILLE

### JANUARY 1999 SESSION

FILED

May 14, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. No. 03C01-9804-CR-00136 |
| | ) | |
| Appellee, | ) | McMinn County |
| | ) | |
| vs. | ) | Hon. Mayo L. Mashburn, Judge |
| | ) | (Deceased) (Trial) |
| LEE LANCE, | ) | |
| | ) | Hon. Carroll L. Ross, Judge |
| Appellant. | ) | (Motion for New Trial) |
| | ) | |
| | ) | (Rape of a Child, Incest) |

FOR THE APPELLANT:

**ELLERY HILL (DECEASED) (at trial)**
Attorney at Law

**CHARLES M. CORN**
District Public Defender
53-A Central Ave., P.O. Box 1453
Cleveland, TN 37364-1453

**THOMAS E. KIMBALL (at trial)**
Assistant Public Defender
110 ½ Washington Ave., NE
Athens, TN 37303

**GERALD L. GULLEY, JR. (on appeal)**
Baker, McReynolds, Byrne, O'Kane,
    Shea & Townsend
607 Market St., Eleventh Floor
P.O. Box 1708
Knoxville, TN 37901-1708

FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**TODD R. KELLEY**
Assistant Attorney General
425 Fifth Ave. N., 2d Floor
Nashville, TN 37243-0493

**JERRY N. ESTES**
District Attorney General

**SANDRA DONAGHY**
Assistant District Attorney
P.O. Box 647
Athens, TN 37303-0647

OPINION FILED:_____

AFFIRMED

**JAMES CURWOOD WITT, JR., JUDGE**

### OPINION

The defendant, Lee Lance, appeals from his convictions of two counts of rape of a child[1] and two counts of incest[2] in the McMinn County Criminal Court. The trial court imposed an effective sentence of 25 years in confinement. In this direct appeal, the defendant raises three issues:

I.    Did the trial court improperly assist the state in proving all of the necessary elements of the offenses of rape of a child and incest, thereby violating the defendant's rights to a fair trial?

II.   Did the trial court unfairly prejudice the defendant by allowing the state to ask leading questions on its direct and redirect examinations of the alleged victim?

III.  Was the evidence sufficient to support a jury verdict of guilty on the charges of rape of a child and incest?

After a review of the record, the briefs of the parties, and the applicable law, we affirm the judgment of the trial court.

The state presented the following proof at trial. The five-year old female victim,[3] identified the defendant, her father, as the person that committed the offenses against her. She testified that she and the defendant were in an outbuilding near the defendant's home when the defendant pulled the victim's pants halfway off. The defendant had his pants halfway off as he laid on top of the victim and touched her with his penis. She specifically stated "he put it on my private" and it hurt. The victim did not remember telling anyone except her mother about the events in the outbuilding.

After the victim recounted the first assault, which is the subject of counts one and two, the prosecutor asked her if the defendant did anything else to her. She replied, "Yes." When the prosecutor asked "What else did he do . . . ?,"

---

[1] Tenn. Code Ann. § 39-13-522(a) (1997).

[2] Tenn. Code Ann. § 39-15-302(a)(1) (1997).

[3] It is this court's policy not to reveal the names of minors involved in sexual abuse.

2

the transcript indicates "(No response.)." Then the prosecutor asked, "Did he touch you somewhere else?," and the transcript indicates "(Nods head affirmatively.)." The victim testified that the nod meant "yes," but when asked where else the defendant touched her, the victim began crying. The victim continued to cry in the face of repeated attempts to elicit her response to the question, and the trial court ultimately declared a recess. During the recess, the child sat with an officer and her stepfather who was instructed by the trial court to try to calm her but not to discuss the case with her. When testimony resumed, the victim again acknowledged that the defendant touched her with his penis somewhere besides her genital area, but again, when questioned where, she began crying. The court suggested that the prosecutor ask her "question another way," and when she asked if the defendant put anything in the victim's mouth, the transcript indicates "(No response; witness crying.)." After the victim indicated she was scared, the prosecutor moved to another line of inquiry, but when she returned to the question about the second assault, the victim resumed crying. At this point the prosecutor said, "Judge maybe I'll let [defense counsel] ask some questions." After cross-examination, a brief re-direct examination about confusion over the victim's grandmother's name, and a brief re-cross examination about the grandmother, the prosecutor said, "That's all I have, your Honor." The trial judge then asked, "Not gonna ask her that question again?" At this point, the prosecutor asked if the defendant put his penis "anywhere else," and the victim responded by indicating to her mouth. She then affirmed that the defendant put his penis there.

A former detective with the McMinn County Sheriff's Department, Larry Moses, testified that he investigated the allegations of the victim. He went to the building where the offenses allegedly occurred and took photographs. After interviewing the victim at the hospital, he had her underwear tested and a rape kit prepared. Both the underwear and the rape kit returned with negative results for

3

body fluids. He did not obtain any hair samples from anyone, nor did he test the mattress in the outbuilding for any signs of physical evidence. Instead, he relied on Dr. Kimberly Breeden's conclusion that there were signs of sexual penetration. Dr. Breeden testified that she examined the victim on May 30, 1994. Dr. Breeden discovered two lacerations on the labia minora, and a torn hymen. Dr. Breeden opined that penetration was the only way to create a tear to the hymen consistent with the victim's and that the injuries occurred somewhere between 48 and 72 hours prior to the examination. Dr. Breeden could not identify the source of penetration, but she opined that the victim had been penetrated.

Bruce Lance, the victim's brother and the defendant's son, testified that he and the victim were visiting the defendant at the time of the alleged offenses. He saw the defendant and the victim alone in the outbuilding with the victim standing in front of a mattress and the defendant sitting on the mattress. He did not see the defendant harm the victim. The victim did not say anything to him about hurting or that anyone harmed her.

The defense presented the following proof at trial. The defendant testified that the victim was visiting with him on the weekend prior to May 30, 1994. He testified that he never had sexual contact with her. The only reason that the victim accused him of these offenses is because the victim's mother, his ex-wife, "put it in her head." He said that the victim's mother stated she would get even with the defendant for having an affair with her ex-sister-in-law. The defendant testified that he was never alone with the victim in the outbuilding, but that he, the victim, Bruce Lance, the defendant's sister Autumn, the defendant's father, and the defendant's grandmother went to the outbuilding to see a large mouth bass fish in the freezer. The victim did not want to return home after visiting with the defendant that weekend.

4

The defendant's mother and father testified at the trial. The defendant's father, E.H. Lance, corroborated the defendant's testimony regarding the large mouth bass fish incident. Mr. Lance testified that the victim did not act strange or distressed, but, instead, she was running and playing all weekend. The defendant's mother, Martha Lance, testified that she picked up the children on Friday night. Mrs. Lance was bathing the victim when the victim stated that her bottom was hurting. Mrs. Lance examined the victim's bottom, finding it to be red and irritated, but she did not think the victim required medical attention. The victim did not know why she was hurting. After Friday night, the victim did not complain about any pain. The victim was running and playing all weekend.

The last witness for the defense was the defendant's fiancee, Brook Taylor. Ms. Taylor testified that the victim's mother refused to allow the defendant to buy the children any presents because she wanted to use the children for revenge against him. The victim's mother was upset about the defendant dating her ex-sister-in-law.

On this evidence, the jury found the defendant guilty of two counts of rape of a child and two counts of incest.

## I. Improper Assistance

The defendant contends that the trial judge improperly assisted the state by "directing the prosecutor to ask additional questions to prove an essential element of the charge." The prosecutor asked the victim several times whether the defendant had touched her somewhere else, but the witness began crying and could not answer the prosecutor. After cross examination, redirect, and recross, the prosecutor said "that's all I have, your honor." The trial court responded by saying

5

"Not gonna ask her that question again?" Without objection from the defense,[4] the prosecutor then asked the victim if the defendant had put his penis anywhere else. She responded that he put his penis in her mouth. This was the only evidence of the second count of rape of a child and second count of incest.

The defendant relies on State v. Brock, 940 S.W.2d 577 (Tenn. Crim. App. 1996), for his allegation of assistance to the state by the trial judge. In Brock, the prosecutor and defense counsel stated they had no further proof. Brock, 940 S.W.2d at 580. The trial judge noted the lack of evidence regarding the defendant's age, which is an essential element of a statutory rape charge. Id. The trial judge *sua sponte* reopened the proof by recalling the defendant to the witness stand over a defense objection. Id. Without the judge recalling the defendant, direct evidence of the defendant's age would not have been in the evidence. This court concluded the trial judge abused his discretion in recalling the defendant and questioning him about his age. Id. at 581.

However, as the defendant concedes, this case is different from Brock. Here, the trial judge did not inject himself into the process by recalling a witness and asking her any questions. We believe the proper inquiry is whether the trial judge "committed an error which resulted in an unjust disposition of the case." State v. Hawk, 688 S.W.2d 467, 472 (Tenn. Crim. App. 1985) (this court rejected the defendant's claim that the trial judge made prejudicial comments and should have recused himself). Although the trial judge's comment may have suggested a further line of inquiry to the state, we find that the comment did not result in an unjust disposition of the case. The comment did not necessarily show that the trial

---

[4]We do not impose a plain error analysis in reviewing this issue, see Tenn. R. Crim. P. 52(b), because of the language of Tennessee Rule of Evidence 605: "The judge . . . presiding at trial may not testify at that trial. No objection need be made in order to preserve that point."

6

judge possessed any bias or opinion regarding the defendant's guilt.  See State v. Suttles, 767 S.W.2d 403, 407 (Tenn. 1989).  We glean from the record that all parties, including the trial judge, were trying to diminish the trauma that testifying was imposing upon this very young witness.  Given the overall context, we view the court's actions as an outgrowth of this accommodation rather than a manifestation of bias.

In fairness, however, the issue is a close question.  The victim's response to the state's final question, as prompted by the trial judge, supplied the only basis in the proof to support the third and fourth counts of the indictment.  The defendant argues in his brief that "without the trial court's active assistance with the State's case...the State would not have been able to prove every element" of the third and fourth counts of the indictment.  On the other hand, this "but for" argument is not squarely dispositive of the issue.  We are influenced in our decision by the fact that the trial judge's question was asked during the examination of the state's first witness and was not imposed at the conclusion of evidence or even after the state rested its case.  There is no indication in the record that the state would not have revisited the lack of proof on the third and fourth counts before it closed its case had the trial judge not asked his question when he did.  We conclude that the trial court's action did not deprive the defendant of a fair trial.

## II. Leading Questions

Next, the defendant challenges the trial court's decision to allow the use of leading questions by the prosecutor during the direct examination of the victim.  It is within the trial court's discretion to allow the use of leading questions. Mothershed v. State, 578 S.W.2d 96, 99 (Tenn. Crim. App. 1978). We review this decision under an abuse of discretion standard.  See State v. Caughron, 855 S.W.2d 526, 540 (Tenn. 1993).

7

The trial court's decision to allow leading questions in child sexual abuse cases has been consistently upheld by this court. See State v. William Dearry, No. 03C01-9612-CC-00462, slip op. at 20-21 (Tenn. Crim. App., Knoxville, Feb. 6, 1998); State v. James Ryion, No. 01C01-9511-CC-00365, slip op. at 16 (Tenn. Crim. App., Nashville, Dec. 30, 1996); State v. Hugh Nicely, No. 01C01-9506-CC-00160, slip op. at 8 (Tenn. Crim. App., Nashville, May 9, 1996); State v. Craig Allen Lewis, No. 01C01-9307-CC-00232, slip op. at 14-15 (Tenn. Crim. App., Nashville, Jan. 12, 1995). "[U]nless [the appellate court] can see that the question was not only clearly leading but clearly prejudicial, the action of [the trial court] will not be interfered with by [the appellate court]." Hale v. State, 281 S.W.2d 51, 58 (Tenn. 1955).

The victim was five years old at the time of this trial. The nature of the situation was very upsetting to her. She barely responded to the prosecutor's questions by saying "yes" or "no." She cried and became so upset at one point that a recess was necessary. Leading questions were the only way to elicit the necessary information from this child. Accordingly, the trial judge did not abuse his discretion in allowing the prosecutor to use leading questions during the direct examination of the victim.

### III. Sufficiency

The defendant challenges the sufficiency of the evidence. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule applies to findings of guilt based upon direct evidence,

8

circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990).

In determining the sufficiency of the evidence, this court should not reweigh or reevaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); Farmer v. State, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). On the contrary, this court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. Cabbage, 571 S.W.2d at 835.

The defendant contends that the state did not present evidence of sexual penetration by the defendant in order to prove the offenses alleged in counts one and two. The defendant argues that the victim's testimony, "he put it on my private," does not establish sexual penetration by the defendant. Sexual penetration is an essential element of rape of a child and incest.[5] Sexual penetration is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." Tenn. Code Ann. § 39-13-

_____

[5] The offense of rape of a child "is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if such victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-522(a) (1997). The offense of incest is committed when a person "engages in sexual penetration . . . with a person, knowing such person to be, without regard to legitimacy: (1) The person's natural parent, child . . . ." Tenn. Code Ann. § 39-15-302(a)(1) (1997).

501(7) (1997).

The defendant argues that it was necessary for the victim to testify that the defendant put his penis "in" her, instead of "on" her, to prove penetration. The victim does not have to use specific words to prove penetration. This court has found sufficient evidence of sexual penetration from the exact language used by this victim in the case of State v. Curtis Newbern, No. 70 (Tenn. Crim. App., Jackson, July 5, 1989).

In Newbern, the victim testified that the defendant "took his private out and put it on my private." Newbern, slip op. at 2. There was evidence of tears on the Newbern victim's hymen as well. Id. On this evidence, this court found sufficient proof of sexual penetration. Id. The same evidence was provided in this case. The defendant laid on top of the victim, touched her with his penis, and "put it on my private." Dr. Breeden testified that the victim had two vaginal lacerations and a torn hymen, which is consistent with penetration. This evidence was sufficient to prove sexual penetration and sustain the jury's verdict of one count rape of a child and one count of incest.

Finally, the defendant contends that there is no testimony from the state's witnesses that the defendant committed these acts within the time frame which Dr. Breeden testified the offense would have occurred. However, the defendant and his parents testified that the victim was visiting the defendant at his parents' home during the time frame for which the offenses occurred. This evidence was sufficient to support the jury's conclusion that the defendant was with the victim during the time frame for which the offenses occurred.

**IV. Conclusion**

10

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

In this case, the terms of the four judgments are not consistent with respect to the concurrent and consecutive running of the sentences. Some "cross-wiring" has occurred, and although the trial court made an attempt to rectify the problem through an order to amend the judgments, we believe the problems persist and moreover discern that the effect of the judgment language is at odds with the sentences as announced by the trial court at the sentencing hearing. When the judgment in a case conflicts with the judge's language from the transcript of the sentencing hearing, the latter controls. State v. Moore, 814 S.W.2d 381, 383 (Tenn. Crim. App. 1991). At the conclusion of the sentencing hearing, the trial judge clearly imposed the two rape sentences of 20 years each to run concurrently with each other and the two incest sentences of five years each to run concurrently with each other. These two effective sentences–20 years for rape and five years for incest-- were imposed to run consecutively to each other to yield a final effective sentence of 25 years. This court's judgment should amend the trial court's judgments in order to make them reflect the method of serving the various sentences as established by the trial court.

_____
JAMES CURWOOD WITT, JR., JUDGE

CONCUR:

_____
GARY R. WADE, PRESIDING JUDGE

_____

11

NORMA MCGEE OGLE, JUDGE