IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 9, 2002

## KONG C. BOUNNAM v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-22830      Bernie Weinman, Judge**

_____

**No. W2001-02603-CCA-R3-PC - Filed December 20, 2002**

_____

The petitioner appeals the post-conviction court's denial of his petition for post-conviction relief from his convictions in the Shelby County Criminal Court for three counts of felony murder and four counts of robbery with a deadly weapon. On appeal, he contends that: (1) the trial court committed plain error by failing to instruct the jury on the lesser-included offenses of facilitation, reckless homicide, and criminally negligent homicide; and (2) his trial counsel provided ineffective assistance of counsel at trial and on direct appeal. We affirm the post-conviction court's denial of the petition for post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Craig V. Morton, Memphis, Tennessee, for the appellant, Kong C. Bounnam.

Paul G. Summers, Attorney General and Reporter; Braden H. Boucek, Assistant Attorney General; William L. Gibbons, District Attorney General; and John Campbell, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

In 1998, the petitioner, Kong C. Bounnam, a/k/a Nln Bounnam, was convicted by a Shelby County Criminal Court jury of three counts of murder in the perpetration of a felony and four counts of robbery with a deadly weapon. He was sentenced by the trial court to life on each of the murder convictions and to twenty-five years on each of the robbery convictions. The robbery sentences were ordered to be served concurrently to each other, but consecutively to the life sentences, and two of the three life sentences were ordered to be served consecutively. The petitioner's convictions were affirmed by this court on direct appeal, and his application for permission to appeal to the supreme

court was denied. See State v. Kong Chung Bounnam, No. 02C01-9803-CR-00095, 1999 Tenn. Crim. App. LEXIS 842, at \**1-2 (Tenn. Crim. App. Aug. 16, 1999), perm. to appeal denied (Tenn. Jan. 24, 2000).

The petitioner's convictions arose from his participation with Duc Phuoc Doan, Heck Van Tran, and Hung Van Chung in a 1987 robbery at Jade East, a Chinese restaurant in Memphis that was owned by John Lee. Id. at \**2-3. John Lee had five children, all of whom worked at the restaurant. These included Arthur Lee, the manager of the restaurant; Chester Lee, who was married to Amy Lee; and Jerry Lee, who operated a jewelry business out of the restaurant. Id. at \*2. In addition to his children, John Lee's mother, Ging Sam Lee; mother-in-law, Kai Yin Chuey; and daughter-in-law, Amy Lee, also worked at the restaurant. Id.

The direct appeal opinion provides the following account of the crime:

> On the afternoon of October 20, 1987, while Arthur Lee, Amy Lee, Kai Yin Chuey, and Ging Sam Lee were preparing to open the restaurant, Hung Van Chung and the [petitioner] entered an open back door and Chung said, "We're looking for a job." The [petitioner] then grabbed Arthur Lee by the neck and pointed a .44 Magnum to his head. When Arthur attempted to grab the weapon, Hung Van Chung shot him. Duc Phuoc Doan and Heck Van Tran, who had accompanied Chung and the [petitioner], then involved themselves in the fray. Van Tran shot Kai Yin Chuey twice, the second time in the head. When Van Tran obtained a key to open the storage room, Amy Lee, who was in the front of the restaurant, began to scream. Hung Van Chung ran in that direction. There were several more shots fired and Amy was killed. Duc Phuoc Doan took two rings from the body of Kai Yin Chuey and was handed a jewelry case by Van Tran. Three of the men left the restaurant and a few seconds later, the [petitioner] limped towards his car, bleeding from a wound to his leg. The [petitioner], who had driven the three other men to the restaurant, told the others that he had been shot but was able to drive a couple of blocks before asking Van Tran to take over the operation of the vehicle.

Id. at \**2-3.

John Lee's elderly mother, Ging Sam Lee, was the only one of the four Lee family members to survive the attacks. Id. at \**6-7. Within an hour after the crime, the petitioner fled with Heck Van Tran and Hung Van Chung to Washington, D.C., where they left the jewelry. Id. at \**4-5. The men then drove to Houston, Texas, where the petitioner remained for two months while his leg healed. From there, he apparently flew to either North or South Carolina to stay with an uncle. Id. at \*5. A number of years later, he was discovered and apprehended in Canada. After a lengthy

extradition process, which included the State's agreement to waive the death penalty for the murders, the petitioner was returned to Tennessee to stand trial.

At trial, the petitioner, who is Laotian, attempted to show that his participation in the robbery was coerced by his three Vietnamese companions, in particular, Hung Van Chung. Id. at **6-7. Van Chung admitted at the petitioner's trial that he had signed a sworn statement to the effect that he had forced the petitioner to participate in the robbery and that he had shot the petitioner during the course of the robbery. He also admitted that he had made a similar admission to trial counsel prior to trial. Id. at **8-9. He maintained, however, that the petitioner had been a willing participant in the crime. He explained that he could not read English very well and that the petitioner had tricked him into signing the sworn statement. Id. at *9. As for his admission to trial counsel, he testified that the petitioner had asked that he lie to the petitioner's defense counsel. Id. The trial court denied trial counsel's request to have Van Chung's sworn statement admitted into evidence, and this court affirmed that decision on appeal, concluding that, because Van Chung admitted having made the statement, extrinsic evidence of his prior inconsistent statement was inadmissible. Id. The admissibility of the sworn statement was the only issue trial counsel raised on direct appeal. Id. at *2.

On March 8, 2000, the petitioner filed a *pro se* petition for post-conviction relief alleging, *inter alia*, ineffective assistance of counsel. Post-conviction counsel was appointed, and on November 2, 2000, an amended petition for post-conviction relief was filed. The petitioner asserted in his *pro se* and amended petitions that his trial counsel provided ineffective assistance at trial and on appeal by, *inter alia*, failing to adequately communicate with the petitioner prior to trial; failing to interview and subpoena several potential witnesses in the case, including Ging Sam Lee; failing to have the petitioner mentally evaluated; failing to request that the bullet in the petitioner's leg be removed and subjected to ballistics testing; failing to hire an investigator; instructing the petitioner not to testify; failing to request that the trial court instruct the jury on the lesser-included offenses of facilitation, reckless homicide, and criminally negligent homicide; and failing to preserve and raise all relevant issues in the direct appeal of the case.

The petitioner testified through an interpreter at the September 7, 2001, evidentiary hearing. He said that he had only a sixth to eighth grade education and could not understand English very well at the time of trial. His present understanding of English was better; nonetheless, he could still understand only about twenty to thirty percent of what was said. Thus, he required an interpreter to assist him in understanding all aspects of the proceeding. The petitioner testified that trial counsel met with him only four or five times prior to trial, without an interpreter. Trial counsel did not discuss his educational limitations or cultural background and did not request a mental evaluation. Trial counsel also did not discuss trial strategies or defenses with him prior to trial. The petitioner said that an interpreter was assigned to assist him during his trial. However, the interpreter did not translate everything that was said because the interpreter, himself, was unable to understand the full trial proceedings.

The petitioner testified that trial counsel failed to request removal of the bullet from his leg for testing. He believed that testing of the bullet would have shown that it came from his codefendant's gun, thereby providing support for his position that he was forced by his companions to participate in the crime. He said that he had wanted to testify at trial, and that he believed his testimony would have helped his case. However, trial counsel told him not to testify and instructed the interpreter to tell the trial court that he did not want to testify. The petitioner additionally complained about trial counsel's failure to interview or call several potential witnesses at his trial, specifically, Jerry Lloyd, who had notarized a statement made by Van Chung; David Johnson, who had witnessed the sworn statement Van Chung gave to the petitioner; and Ging Sam Lee, whose testimony, the petitioner asserted, would have supported his claim that his participation was coerced. The petitioner acknowledged on cross-examination that Heck Van Tran had testified on his behalf, and that Hung Van Chung, who they had originally thought would testify in accordance with his sworn statement, had changed his story at trial. He further acknowledged that trial counsel had told him that Ging Sam Lee would not help his case.

Trial counsel testified that he had been a licensed and practicing attorney in Tennessee for twenty years. The trial court first appointed him to represent the petitioner in response to a motion filed by the State, soon after the petitioner's arrest in Canada, seeking to depose the elderly eyewitness in the case. Trial counsel said that he successfully opposed that motion on the basis that he had not yet had the opportunity to discuss the case with his client. During the lengthy extradition process that followed, the petitioner was represented by Queens Court counsel in Canada, with whom trial counsel had three or four telephone conversations. In addition to discussing the case with the petitioner's counsel in Canada, trial counsel received and reviewed all documents that had been submitted in the petitioner's extradition proceedings, and reviewed the trial transcripts and evidentiary filings from two codefendants' trials. He also reviewed the statements that had been made to the police by the petitioner's codefendants following their arrests.

Trial counsel testified that he had several discussions with the petitioner about the evidence against him. An interpreter was not present for these meetings; the petitioner spoke English, and it was obvious to trial counsel that he understood their conversations. Trial counsel said that he requested an interpreter for trial because he thought the petitioner might need assistance with some of the more technical and legal terms that would be used. The petitioner's consistent position was that his participation in the robbery had been coerced, and he was able to obtain sworn statements from both Heck Van Tran and Hung Van Chung to that effect. These sworn statements, however, contradicted the statements they had given police immediately after their arrests, in which they had fully implicated the petitioner in the crime.

Trial counsel testified that Van Tran testified in accordance with his sworn statement that the petitioner had been coerced into participating in the crime. Van Chung, however, who originally told trial counsel that he would testify on the petitioner's behalf, later reneged, telling trial counsel that the petitioner had tricked and threatened him into making his statement, and that he was going to tell the truth if called as a witness at his trial. Although trial counsel was not certain, he thought that the State had called Van Chung as a witness during its case in chief. He said that he was able to cross-

examine Van Chung about the sworn statement, although he was not able to get the statement itself admitted into evidence.

Trial counsel testified that he subpoenaed Jerry Lloyd, the woman who notarized Van Chung's statement, but there was no need to call her to the stand because Van Chung admitted making the statement. He said that after Van Chung's testimony, the petitioner gave him the names of two other people, one being David Johnson, whom the petitioner said were present in the jail when Van Chung gave the statement to the petitioner, and who would be able to testify regarding what Van Chung had said at that time. Because he had not asked Van Chung about any prior inconsistent statements, the trial court would not allow him to put Johnson on the stand, but did allow him to make an offer of proof as to what his testimony would be. Trial counsel said that the petitioner had wanted him to call Ging Sam Lee to testify that the petitioner did not shoot anyone during the robberies. According to trial counsel, this was the only information Ms. Lee could have provided that would have helped the petitioner. However, there was never any dispute that the petitioner had not shot anyone, and trial counsel did not think "having an . . . octogenarian little Vietnamese [sic] woman having to relive the . . . worst day of her entire life in front of a jury" would be helpful to the petitioner's defense. Trial counsel said that there was also no dispute that the petitioner had been shot, and, since no weapons were recovered, there would have been no benefit to having the bullet in the petitioner's leg tested. He had no doubt that the petitioner was competent, as the petitioner never gave him any indication that he was suffering from any mental defect or disease. According to trial counsel, the petitioner "knew exactly what was going on" and was "quite on top of it."

On cross-examination, trial counsel testified that he did not see how hiring a private investigator would have helped the case. He said he talked with the petitioner's family, but they were unable to provide support for the petitioner's claim that he was coerced. He had not filed a motion in limine to exclude the videotape of the crime scene because he thought it helped the petitioner's defense of coercion. He explained his strategy:

> My client was claiming coercion as a defense. In my opinion and my tactics were, the more gruesome I could show that these other people were, the ones that I was saying was [sic] coercing my client, the better my argument would be that yes, he was coerced. Look at what these people do. Look at how gruesome, how horrible these people are. This was the coercion I was trying to convince the jury that he was under at that time. I didn't want to limit it. I wanted to show just how horrible it was.

Trial counsel testified that there was no doubt about what had happened at the scene or that the petitioner had been present; the only question was whether the petitioner had been a willing participant. He conceded he had allowed the State to ask leading questions of some of its witnesses at trial, but said that it was not on any critical points. Trial counsel explained that a little leading was required in order to get through the testimony, since the witnesses were not native English speakers.

Trial counsel testified that he had advised the petitioner to testify, but the petitioner was adamant that he did not want to take the stand. Trial counsel was confident that the petitioner understood his rights and knew what he was saying when he told the trial court he did not want to testify. Trial counsel said that he raised the only issue on appeal that he thought had any merit, which was the admissibility of Van Chung's sworn statement. He thought it would have been frivolous for him to have raised a sufficiency of the evidence issue on appeal.

On September 25, 2001, the post-conviction court entered an order denying the petition for post-conviction relief, finding that trial counsel's performance fell "within the range of competency demanded by an attorney in a criminal case," and that counsel's representation of the petitioner "complied with the requirements set out by the Supreme Court of Tennessee in Baxter v. Rose, 523 S.W.2d 930." Thereafter, the petitioner filed a timely appeal to this court.

The only portion of the petitioner's trial transcript originally included in the record on appeal was voir dire of the jury and opening and closing arguments of counsel. This court denied post-conviction counsel's motion to supplement the record with the entire trial transcript, finding that counsel had had the opportunity to introduce the trial transcript as an exhibit at the post-conviction hearing but had failed to do so. However, because our initial review of the record revealed that the post-conviction court's order denying relief refers to a portion of the trial transcript that was not included in the original record on appeal, we subsequently entered an order requesting that the entire transcript be sent to this court. Accordingly, for the purposes of this appeal, we have reviewed not only the transcript of the post-conviction evidentiary hearing, but also the entire transcript from the petitioner's trial. See Tenn. R. App. P. 24(g) (providing that record may be supplemented "as may be necessary to convey a fair, accurate and complete account of what transpired in the trial court with respect to those issues that are the bases of appeal").

## ANALYSIS

### I. Failure to Instruct on Lesser-Included Offenses

The petitioner first contends that this court should consider, under the "plain error" doctrine of Tennessee Rule of Criminal Procedure 52(b), whether the trial court erred in failing to instruct the jury on the lesser-included offenses of facilitation, reckless homicide, and criminally negligent homicide. The plain error doctrine, however, is not applicable in a post-conviction proceeding. See State v. West, 19 S.W.3d 753, 756 (Tenn. 2000). The petitioner did not raise the trial court's failure to instruct on these lesser-included offenses in either his motion for a new trial or in his direct appeal. Consequently, the petitioner has waived the issue and cannot now raise it for the first time in a petition for post-conviction relief.

Moreover, even if not waived, the petitioner would not be entitled to relief on this claim. The petitioner was convicted of offenses that occurred on October 20, 1987. Although facilitation has been held to be a lesser-included offense to felony murder, see State v. Ely, 48 S.W.3d 710, 720 (Tenn. 2001); State v. Fowler, 23 S.W.3d 285, 288 (Tenn. 2000), Tennessee Code Annotated section

39-11-403, "Criminal responsibility for facilitation of a felony," was not enacted until 1989. See Tenn. Code Ann. § 39-11-403 (1997). Similarly, neither reckless homicide, enacted by the Public Acts of 1993, nor criminally negligent homicide, enacted by the Public Acts of 1989, existed in 1987. See id. §§ 39-13-215, -212. Therefore, the trial court did not err by failing to instruct the jury on offenses that did not exist at the time the petitioner committed the crimes.

## II. Ineffective Assistance of Counsel

The petitioner next contends that the post-conviction court erred in finding that he received the effective assistance of counsel at trial and on appeal. He argues that trial counsel was ineffective at trial, *inter alia*, for: failing to make use of an interpreter in conversations with the petitioner prior to trial and hiring an incompetent interpreter at trial; permitting the prosecutor to make extensive use of leading questions on direct examination; failing to call Ging Sam Lee as a witness; "coercing" the petitioner not to testify; and failing to present an alternative defense when faced with Van Chung's recantation of his sworn statement. He argues that trial counsel was ineffective on appeal for failing to raise all relevant issues, including whether the trial court erred in failing to instruct the jury on the lesser-included offenses of facilitation, reckless homicide, and criminally negligent homicide. The State argues that the post-conviction court did not err in finding that the petitioner failed to meet his burden of demonstrating that he was denied the effective assistance of counsel at trial or on appeal. We agree with the State.

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns, 6 S.W.3d at 461.

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient, and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious

that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

Because both prongs of the test must be satisfied, a failure to show either deficient performance or resulting prejudice results in a failure to establish the claim. See Henley, 960 S.W.2d at 580. For this reason, courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

### A. Language Barrier and Failure to Communicate

The petitioner complained at his evidentiary hearing about trial counsel's failure to hire an interpreter to assist in his pretrial conversations with the petitioner, failure to hire a competent interpreter at trial, failure to discuss trial strategies with the petitioner, and failure to request that the petitioner be mentally evaluated. With regard to these allegations, the post-conviction court found that trial counsel had adequate discussion with the petitioner, and that there was "no indication that the [petitioner] needed to be mentally evaluated prior to trial and there is still no indication that an evaluation would have been appropriate[.]" The court further found that the petitioner was able to understand and communicate in English, noting that when the petitioner became excited at the post-conviction hearing he was able to respond to questions without the aid of the interpreter.

The evidence supports the post-conviction court's findings of fact. The petitioner asserted at the post-conviction hearing that he had only a sixth to eighth grade education, that his understanding of English was extremely limited, and that trial counsel, who met with him without an interpreter, failed to discuss defense strategies or to inquire into his educational limitations or cultural background. Trial counsel, by contrast, testified that the petitioner obviously understood English, and that he gave no indication he was suffering from any mental defect. He said that he had several discussions with the petitioner regarding the evidence against him, and that the petitioner,

who was "on top of it," played an active role in his defense, obtaining the sworn statement from Van Chung when Van Chung's post-conviction counsel would not allow Van Chung to meet with trial counsel. The post-conviction court, which had the opportunity to observe the petitioner in person, also found it "obvious" the petitioner was able to understand and communicate in English. The petitioner, therefore, is not entitled to post-conviction relief on these claims.

## B. Failure to Object to Leading Testimony

The petitioner argues that trial counsel was ineffective for failing to object to the prosecution's extensive use of leading questions on direct examination. We first note that the petitioner has failed to cite any portion of the trial transcript in support of this claim. Ordinarily, failure to make appropriate citations to the record waives an issue on appellate review. See Tenn. R. App. P. 27(a)(7); Tenn. Ct. Crim. App. R. 10(b). Regardless of the waiver, we conclude that the petitioner has not shown that trial counsel was deficient for failing to object to the prosecutor's leading, or that he was prejudiced as a result. Trial counsel conceded at the evidentiary hearing that he had not objected to the prosecutor's leading questions. Trial counsel explained, however, that he thought a certain amount of leading was necessary in order to get through the testimony, due to the witnesses' language difficulties. Moreover, he said that he had not allowed leading on any important points in the testimony.

Based on our review of the trial transcript, we agree with trial counsel that some leading was required in this case. Many of the State's key witnesses were obviously not fluent in English. Eliciting and understanding testimony from such witnesses proved difficult, as the following exchange between the prosecutor and State witness Hien Huynh reveals:

Q   After you talked to Heck on the phone, what did you do?

A   On the phone, he told me – asked me to buy for –

[TRIAL COUNSEL]: Your Honor –

Q   Not what he said; what did you do[?]

A   (No audible response.)

Q   What did you do after you talked to him[?]

A   I go buy some alcohol.

Q   You went and bought alcohol?

A   Yes, sir.

Q   What kind of alcohol? – drinking alcohol?

A   No.  For – for his skin – sometime you get cuts or –

Q   Okay.  What else did you buy?

A   And, uh, cot – I don't know what they say on –

Q   Cotton balls?

A   Yes, sir.

Q   And once you bought the alcohol and the cotton balls, what did you do?

A   He tell me bring it up there.

Q   Say that again.

A   He tell me bring it to –

Q   [TRIAL COUNSEL]: Your Honor, please –

    THE COURT: No.  Let him answer.  I mean, just take your time and be as clear as you can.

    THE WITNESS: Yes, sir.

. . . .

Q   Okay.  Now, what did you do with the alcohol and the cotton balls?

A   When I get there, and they – after that, they – they didn't take the alcohol (indiscernible).

    THE COURT REPORTER: I didn't understand the last of his answer.

    THE COURT: Okay.  Now, would you repeat your last answer?  The court reporter couldn't understand you.

THE WITNESS:  I said when I get there and Heck – they don't receive the alcohol, but they are – after that they left.

THE COURT REPORTER:  And after, what?

THE WITNESS:  When I get there, and they didn't receive the alcohol, and they left – after that they left.

THE COURT REPORTER:  They didn't receive the alcohol?

THE WITNESS:  No.  I didn't give it to them.

THE COURT:  Could you repeat that again?

A   I bring the alcohol over to Viet's house, and, uh, after I seen Heck and Hung, they left – and they didn't get the – the alcohol.

THE COURT: Do you mean they did not take the alcohol from your hands?

THE WITNESS: No, sir.

THE COURT: All right.

Even if trial counsel had objected to the State's leading questions, it is unlikely that the trial court would have sustained the objection.  It is within the discretion of the trial court whether to allow the use of leading questions on direct examination, and its decision in this regard will not be reversed absent an abuse of discretion.  Mothershed v. State, 578 S.W.2d 96, 99 (Tenn. Crim. App. 1978).  As the above quoted portion of the trial transcript reveals, the trial court was itself forced to ask Huynh at least one leading question in order to clarify his somewhat muddled and incomprehensible testimony.  Although trial counsel did not object to the form of the questions, the record reflects that he raised numerous other objections during the testimony of the State's non-native English speaking witnesses, including objections based on hearsay, and the proper scope of the State's direct examination.  Responding to one such objection raised by trial counsel during Huynh's testimony, the trial court stated:  "The way he's responding, I'm going to give the state some latitude – just as much as I'm going to give you."

### C.  Failure to Call Ging Sam Lee as Witness

The petitioner argues that trial counsel was deficient for failing to call John Lee's elderly mother, Ging Sam Lee, as a witness at his trial.  He asserts that Ging Sam Lee could have provided crucial support for his claim that his participation in the crime was coerced, and that trial counsel's failure to call her as a witness likely prejudiced the outcome of his trial.  However, the petitioner

failed to offer proof of how the testimony of Ging Sam Lee, who did not testify at the evidentiary hearing, would have supported his claim of coercion. Trial counsel, who said that he had reviewed her statements and prior testimony, testified that the only favorable testimony that Ging Sam Lee could have provided, that the petitioner did not shoot anyone, had already been established through other evidence. He, therefore, decided that the risks of having an elderly woman in frail health appear before the jury to describe the horrific events that had occurred to her and her family far outweighed any benefit that might be gained from her testimony.

Trial counsel explained on cross-examination:

Q. With regards to Ms. Lee, the only surviving family member who was there at the restaurant.

A. Right.

Q. What in essence was her statement?

A. That he didn't kill anybody. He didn't shoot anybody.

Q. Did she have any information whatsoever or given any information whatsoever to indicate he wasn't a willing participant?

A. Of course, I haven't looked back through my file. It's been part of the record or been here. But to the best of my knowledge, I cannot remember anything that she could have said or had said. As a matter of fact, one of the statements that she gave, that went to the extradition proceeding, that he you know, he had been shot, that he didn't shoot anybody, that he did get shot, but as I said, her having to be wheeled in here if they could even wheel her in here, she was in such dire health at the time, to go through what had to have been the most horrible, horrible day of her life, nothing that she could have said would have outweighed that.

Q. Was there any indication to the best of your recollection in her statement that he was ever wielding a gun?

A. I believe her statement that she didn't see him with the gun, but even he admits that he had a gun. Like he said here on the stand, he had the gun where he had it[.]

Relative to this allegation of ineffective assistance, the post-conviction court found that the decision not to call Ging Sam Lee as a witness at trial was "a well thought out trial decision made by the trial attorney." The record fully supports this finding.

### D. Petitioner's Failure to Testify

The petitioner alleges that trial counsel "coerced" him into not testifying by telling him that he could not testify and having the interpreter answer "no" on his behalf when the trial court asked if he wished to take the stand. In considering this allegation, the post-conviction court first noted trial counsel's testimony that he had explained to the petitioner his right to testify or not testify, and that the decision had been left to the petitioner. The court also noted that the trial transcript reflected that the trial court voir dired the petitioner concerning his right to testify, and the petitioner stated that he had decided not to testify in his own behalf. Thus, the court found that the decision not to testify had been freely and voluntarily made by the petitioner.

The record fully supports this finding. The trial transcript reflects that the following voir dire of the petitioner was conducted through his interpreter, Kham Chamleunsouk:

> BY [TRIAL COUNSEL]:
>
> Q  Mr. Bounnam, we have discussed – you and I have discussed whether or not you're going to take the stand and testify in your own behalf in this case, haven't we?
> (Question translated).
>
>     (Mr. Bounnam to Mr. Chamleunsouk.)
>
>     [TRIAL COUNSEL]: You'll need to speak up too.
>
>     THE COURT: You need to answer for the record.
>
> A   (Interpreter) Yes.
>
>     (Mr. Bounnam to Mr. Chamleunsouk.)
>
>     [TRIAL COUNSEL]: K.C., you need to answer for the record.
>
>     MR. CHAMLEUNSOUK: Oh. Okay.
>
>     (Mr. Bounnam to Mr. Chamleunsouk/ Mr. Chamleunsouk to Mr. Bounnam/Bounnam to Mr. Chamleunsouk.)
>
> A   ( Interpreter) He don't want to take the stand.

-13-

(Mr. Bounnam to Mr. Chamleunsouk.)

Q ([Trial counsel]) It is your decision not to take the stand. Is that correct? (Question Translated.)

A (Interpreter) Yes.

[TRIAL COUNSEL]: That's all I have.

THE COURT: Okay. Would you tell Mr. Bounnam I'm going to tell the jury that the fact he did not testify (translated) they cannot hold that against him for any purpose whatsoever (translated).

MR. BOUNNAM: (Interpreter) Yes.

THE COURT: Okay. Are you clear in your mind you do not wish to testify (translated)?

MR. BOUNNAM: (Interpreter) Yes.

THE COURT: You do understand you have the right to testify (translated)?

MR. BOUNNAM: (Interpreter) Yes.

According to his trial testimony, the petitioner voluntarily chose not to take the stand after having been fully informed by the trial court of his right to testify. The petitioner provided no proof at the evidentiary hearing in support of his claim that his interpreter failed to accurately translate either the trial court's words, or his own. Furthermore, had the interpreter made an erroneous translation on such an important point, it would appear unlikely that the petitioner would not have realized the mistake, given trial counsel's testimony that the petitioner's English skills were adequate for them to communicate without the aid of an interpreter. We conclude, therefore, that the petitioner is not entitled to relief on this claim.

### E. Failure to Present Alternative Defense or Raise Additional Issues on Appeal

The petitioner contends that trial counsel was ineffective for failing to develop or present an alternative defense when confronted with Van Chung's recantation of his sworn statement. He asserts that, instead of continuing with his "all-or-nothing" defense, trial counsel should have developed facts that would have allowed the jury to convict him of the lesser-included offenses of facilitation, reckless homicide, or criminally negligent homicide. The petitioner additionally contends that trial counsel was ineffective for not raising the trial court's failure to charge these lesser-included offenses as an issue in his appeal. However, as we have previously discussed, the

-14-

statutes creating these offenses had not been enacted at the time the petitioner committed the crimes. Trial counsel, therefore, was not deficient for failing to develop a defense based on the offenses, or for failing to raise the lack of jury instructions as to these offenses as an issue on appeal.

Furthermore, when assessing a claim of ineffective assistance of counsel, this court must indulge in a strong presumption that the conduct of counsel fell within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless they were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). It is difficult to envision what alternative defense trial counsel could have developed, in light of the evidence against the petitioner. Trial counsel based his defense of coercion on the petitioner's claim, maintained throughout, that his participation in the crime was forced. Although Van Chung recanted from his sworn statement, Van Tran testified on the petitioner's behalf, offering support for the petitioner's claim of coercion. The fact that a strategy or tactic failed does not alone support the claim of ineffective assistance of counsel. See Thompson, 958 S.W.2d at 165. We, therefore, conclude that the petitioner has failed to meet his burden of demonstrating either a deficiency in counsel's performance or a resulting prejudice based on counsel's failure to develop an alternative defense.

## CONCLUSION

We conclude that the petitioner has failed to meet his burden of demonstrating that he was denied the effective assistance of counsel at trial or on appeal. Accordingly, we affirm the post-conviction court's denial of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE