FILED

10/05/2017

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 14, 2017 Session

## STATE OF TENNESSEE v. DAVID ROGER PETTY

**Appeal from the Criminal Court for DeKalb County**
**No. 2015-CR-12     Gary McKenzie, Judge**

_____

### No. M2016-01036-CCA-R3-CD

_____

Defendant, David Roger Petty, was indicted for aggravated burglary and theft of property valued at $1,000 or more, but less than $10,000. Following a jury trial, Defendant was convicted as charged. The trial court ordered concurrent sentencing for an effective sentence of 15 years in confinement. In this appeal as of right, Defendant contends that: 1) the evidence was insufficient to support his convictions; 2) the trial court erred in sentencing him; 3) the trial court erred by allowing a State's witness to testify last despite having been present during the testimony of the two preceding witnesses; and 4) the trial court erred by allowing the State to use evidence of Defendant's prior theft convictions for impeachment purposes. Having reviewed the entire record and the briefs of the parties, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

Craig P. Fickling, District Public Defender; and Allison R. West, Assistant Public Defender (on appeal) and Michael Auffinger, Smithville, Tennessee (at trial) for the appellant, David Roger Petty.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Bryant C. Dunaway, District Attorney General; and Stephanie Johnson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts*

On July 8, 2014, Jonathan Walls left his house about 11:30 a.m. and returned approximately one hour later. When he returned home, he found that a door had been kicked in and his wife's jewelry box was missing. Mr. Walls called the police to report the incident. Mr. Walls did not see the perpetrator at the residence.

Tracy Ann Walls, Mr. Walls' wife, returned home from work after Mr. Walls called her and told her about the break-in. She saw that the side door was "smashed in." She observed that her jewelry box had been taken from their bedroom. She testified that her jewelry box contained approximately eight to ten necklaces, valued at approximately $1,000; a wedding ring set, valued at approximately $800; a diamond pendant, valued at approximately $250; "numerous silver earrings," valued at approximately $300; an amethyst bracelet, valued at approximately $75; and "numerous silver rings," valued at approximately $60. The value of these items was $2,485. Ms. Walls estimated that the total value of all the stolen jewelry was over $3,000. After the burglary, Mr. and Ms. Walls looked for her jewelry in local pawn shops. They found some of Ms. Walls' jewelry at a pawn shop in McMinnville and reported it to the lead detective in the case.

Detective Robert Patrick, of the DeKalb County Sheriff's Office, investigated the burglary of the Walls' residence. Detective Patrick testified that Ms. Walls identified some of the items of jewelry stolen from her home at First Choice Pawn Shop. Some of Ms. Walls' jewelry was recovered from the pawn shop. Detective Patrick also discovered that Defendant sold some of Ms. Walls' jewelry to Granny's Gold Mine, a jewelry store in DeKalb County. When Detective Patrick questioned Defendant, Defendant denied that he stole jewelry from Ms. Walls' home. Defendant stated that his co-defendant, Anthony Colwell, stole the jewelry. Defendant stated that he pawned the jewelry because his co-defendant did not have identification. Detective Patrick testified, "that's ironically the same thing the co-defendant said." There was no further testimony about what "the co-defendant said," thus it is not clear whether the co-defendant admitted to committing the burglary and taking the jewelry by himself, or whether the co-defendant was denying his own involvement in the burglary and taking of the jewelry. Defendant also stated that he stole some of the items of jewelry from his co-defendant and sold them by himself "to make him a little extra money."

Lori Doublestein testified that she had been the manager at First Choice Pawn and Jewelry for five years. She testified that she knew Defendant and that he was "one of [her] customers." On July 8, 2014, the same day the Walls' home was burglarized, Defendant and another man entered the store. Ms. Doublestein testified that Defendant

brought in "quite a bit of jewelry." The jewelry included a necklace with a mariner's cross, which Ms. Walls identified as one of the necklaces missing from her home. Ms. Doublestein testified that Defendant told her not to "be loud" when she gave him the total payment for the jewelry, because he did not want the man who was with him to hear her. Ms. Doublestein made a copy of Defendant's driver's license and paid him for the jewelry. Ms. Doublestein testified that Defendant had been in the store again the week prior to trial, and he asked if she remembered how much she had paid him "because he wanted to make things right." Ms. Doublestein did not accept any money from Defendant.

Sandra Kay Petty, Defendant's wife, testified that Anthony Colwell, the co-defendant, came to her house on July 8, 2014, and Defendant left with him.

Defendant did not testify or present any other evidence at trial.

### *Sentencing hearing*

Bradley Gabbert, an employee of the Tennessee Department of Correction (TDOC), testified that he prepared the presentence report. Mr. Gabbert testified that Defendant had "a very extensive criminal history." He testified that Defendant's prior convictions included shoplifting, misdemeanor theft, DUI, disorderly conduct, assault with intent to commit a felony, kidnapping, sale of marijuana, and burglary. Defendant had previously violated parole twice, and he violated probation five times. Mr. Gabbert testified that Defendant had 11 prior convictions, including six prior felonies.

Megan Stone, another TDOC employee, met with Defendant during the preparation of the presentence report. Ms. Stone testified that Defendant stated that he had been using drugs for "about 30 years." Ms. Stone asked Defendant to submit to a drug screen, and Defendant initially refused, stating that he was not on probation or parole. Ms. Stone explained that the trial court had ordered a drug screen, and Defendant submitted to the drug screen. Defendant tested positive for marijuana, benzodiazepines, and multiple opiates. Defendant stated that he did not have any prescriptions and that he bought pills from friends.

Detective Patrick testified that he recovered some of Ms. Walls' jewelry at a pawn shop in Warren County. He testified that the pawn shop had paid "roughly" $175 for the jewelry. He testified that he recovered more of Ms. Walls' jewelry at Granny's Gold Mine, and he was "not quite sure on the amount of restitution owed to Granny's Gold Mine." He testified that the value of the property taken from Mr. and Mrs. Walls was $2,000.

Defendant testified that he fully cooperated with the investigation. Defendant testified that Colwell asked him to go with him to sell some jewelry. He stated that Colwell did not tell him where he got the jewelry. Defendant added that he had been to the emergency room the week prior to sentencing and was diagnosed with pancreatitis. He testified that his "aorta needs cleaned out, and they took [his] gallbladder." Defendant claimed that he had "four holes in [his] stomach." He was scheduled to return to the hospital the following week. He said that if doctors did not clean out his aorta, it was going to kill him.

Defendant testified that he received food stamps and that he had no other source of income. He said that he had "filed for disability two or three times in the past" and that he had been "waiting on a decision for four years now." He testified that he had been living with his sister "[o]n and off" since 2003.

On cross-examination, Defendant acknowledged that he had an extensive criminal history. He also acknowledged that his drug use "probably caused some of" his health conditions. Defendant testified that he believed the jewelry Colwell asked him to pawn came from Colwell's girlfriend.

At the conclusion of the sentencing hearing, the trial court stated that it had considered the evidence at trial, the presentence report, the principles of sentencing and argument as to sentencing alternatives, the nature of the criminal conduct, and the statutory mitigating and enhancement factors. The trial court found that Defendant had seven prior felony convictions and classified Defendant as a career offender. The trial court considered Defendant's extensive criminal history as an enhancement factor, but noted "I don't think it really matters, because I've classified him as career. . . . But I do, just for the record, say the prior criminal history and the multiple convictions certainly weigh strong for the state." The trial court gave little weight to the mitigating factor that Defendant's conduct did not cause serious bodily injury. The trial court noted, "[w]hen you commit that type of behavior, you are opening yourself up to a confrontation in an individual's home, which could lead to violence." The trial court also considered the mitigating factor that Defendant was motivated by a desire to provide necessities for himself or his family and that Defendant "did attempt to, I guess, make good on the debt . . . but that did occur after detection." The trial court determined that those factors were not entitled to much weight. The trial court found that confinement was necessary to avoid depreciating the seriousness of the offense and to protect society from a criminal with a long criminal history. The court concluded that measures less restrictive than confinement had frequently been applied unsuccessfully.

The trial court sentenced Defendant to serve 15 years for aggravated burglary and 12 years for theft, to be served concurrently, which the court noted was the "maximum

sentence allowable by law," because the two convictions "will merge." The merger analysis was misplaced. During the sentencing hearing, the trial court, with the explicit approval of and agreement by the prosecutor, concluded that theft is a lesser included offense of aggravated burglary, based on the reasoning that theft is a lesser included offense of *robbery*. "Robbery is the *intentional or knowing theft of property* from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a). Robbery cannot be committed unless a theft is committed. Thus, theft is a lesser included offense of robbery. As charged in the indictment in this case, aggravated burglary is the entering of a habitation, without the effective consent of the owner, with the *intent* to commit theft. No theft is necessary to prove aggravated burglary. The State was only required to prove the intent to commit a theft. T.C.A. §§ 39-14-402, -403. In any event, judgments were properly entered without merger of the theft conviction with the aggravated burglary conviction. The trial court ultimately sentenced Defendant as a Range III persistent offender pursuant to T.C.A. § 40-35-107(a)(1) for each conviction. ("A persistent offender is a defendant who has received: [a]ny combination of five (5) or more prior felony convictions within the conviction class or higher or within the next two (2) lower felony classes, where applicable;").

### *Analysis*

### *Sufficiency of the evidence*

Defendant contends that the evidence was insufficient to support his convictions. We conclude that the proof was sufficient to support Defendant's convictions.

"Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009) (citing *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992)). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Parker*, 350 S.W.3d 883, 903 (Tenn. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see* Tenn. R. App. P. 13(e). When this court evaluates the sufficiency of the evidence on appeal, the State is entitled to the "strongest legitimate view of the evidence as well as all reasonable . . . inferences . . . [that may be drawn from that evidence]." *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011) (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Sutton*, 166 S.W.3d 686,

691 (Tenn. 2005); *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *Hanson*, 279 S.W.3d at 275). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. *Dorantes*, 331 S.W.3d at 379 (citing *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court shall not substitute its inferences for those drawn by the trier of fact. *Id.*

Defendant contends that the State failed to establish that Defendant entered the victims' home and that the State failed to establish the value of the stolen property. The State responds that the evidence was sufficient to support Defendant's convictions for aggravated burglary and theft under a theory of criminal responsibility. As pertinent to this case, a person commits aggravated burglary when he or she, without the effective consent of the owner, enters a habitation with intent to commit a theft. T.C.A. §§ 39-14-402(a)(1), -403(a). Aggravated burglary is a Class C felony. T.C.A. § 39-14-403(b). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103(a). Theft of property is a Class D felony if the value of the property is $1,000 or more but less than $10,000. T.C.A. § 39-14-105(a)(3).

Criminal responsibility can justify Defendant's conviction of theft, but the theory of criminal responsibility is not the more appropriate basis to support Defendant's conviction for aggravated burglary. A person is criminally responsible for an offense committed by the conduct of another, if "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." T.C.A. § 39-11-402(2). Criminal responsibility is not a distinct crime but "a theory by which the state may prove the defendant's guilt based on another person's conduct." *State v. Osborne*, 251 S.W.3d 1, 16 (Tenn. Crim. App. 2007) (citing *State v. Mickens*, 123 S.W.3d 355, 389-90 (Tenn. Crim. App. 2003)). In the theory of criminal responsibility, "an individual's presence and companionship with the perpetrator of a felony before and after the commission of an offense are circumstances from which his or her participation in the crime can be inferred." *State v. Watson*, 227 S.W.3d 622, 639 (Tenn. Crim. App. 2006) (citing *State v. Ball*, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998)). In such situation, "[n]o particular act need be shown, and the defendant need not

- 6 -

have taken a physical part in the crime to be held criminally responsible." *Id*. (citing *Ball*, 973 S.W.2d at 293).

Viewed in the light most favorable to the State, the evidence presented at trial showed that on July 8, 2014, Mr. Walls returned home to find that someone had kicked in a door and entered his home. He discovered that a jewelry box containing Ms. Walls' jewelry was missing. On the same day as the aggravated burglary, Defendant sold "quite a bit" of Ms. Walls' jewelry at a local pawn shop. Defendant asked the clerk who handled the transaction not to announce the total payment for the jewelry too loudly so that the man who accompanied him to the pawn shop could not hear her. Defendant admitted to Detective Patrick that he sold the jewelry and claimed that his co-defendant entered the Walls' home and stole it. Defendant also admitted that he sold some pieces of jewelry to other pawn shops and did not share the proceeds with his co-defendant. The evidence showed that Defendant benefitted from the proceeds of the offense of theft and aided his co-defendant in the commission of the offense of theft. Furthermore, it is the law in Tennessee that possession of recently stolen property, unless it is satisfactorily explained, creates a permissible inference that the person who possessed the stolen property gained possession through theft. *See State v. James*, 315 S.W.3d 440, 450 (Tenn. 2010). "'[T]heft of property' [is] defined in terms of knowingly obtaining *or* exercising control over property without the owner's consent and with the intent to deprive the owner of the property." *Id*. (citing T.C.A. § 39-14-103) (emphasis added).

Also, as to possession of recently stolen property allowing an inference that the person possessing the property also committed an aggravated burglary, the Supreme Court in *James* held,

> A careful review . . . leads us to the conclusion that the better rule is to permit [an inference of] a burglary from possession of recently stolen property only when there exists a rational connection between possession and participation, when guilt [of burglary] more likely than not flows from possession, and, importantly, when there is some other evidence *corroborating the burglary* that warrants the inference.

*James*, 315 S.W.3d at 452 (citing 13 Am. Jur. 2d *Burglary* § 48 (2009) (emphasis added).

The commission of the burglary on July 8, 2014, was overwhelmingly corroborated by the testimony of Mr. and Mrs. Walls. Defendant's sale of property stolen during that burglary, on the very same day as the aggravated burglary, is a rational connection between Defendant's possession of the stolen property and his participation in the aggravated burglary. Thus, Defendant's guilt of aggravated burglary more likely than not flows from his possession and prompt sale of items stolen during the aggravated

burglary. Whether Defendant's explanation for his possession of the recently stolen property was satisfactory to rebut the inference was a question for the jury, and the jury obviously rejected Defendant's explanation. *Id.* at 453.

Defendant also argues that the evidence does not establish that the jewelry was worth more than $1,000 because Ms. Walls did not provide receipts or an appraisal. "A witness may testify to the value of the witness's own property or services." Tenn. R. Evid. 701(b). "Owners are competent by fact of ownership to testify to the value of the property stolen." *State v. Jonathan Thornton*, No. E2001-02491-CCA-R3-CD, 2002 WL 31174211, at *3 (Tenn. Crim. App., Sept. 30, 2002), *perm. app. denied* (Tenn. Feb. 10, 2003). Ms. Walls testified that the value of the items of jewelry stolen from her home was approximately $3,000. Accordingly, the evidence was sufficient to establish that the value of the stolen property was more than $1,000. Defendant is not entitled to relief on his challenges to the sufficiency of the evidence to support his convictions.

*Sentencing*

Defendant contends that the trial court abused its discretion in sentencing him because it did not give sufficient weight to mitigating factors, it miscalculated the number of Defendant's prior convictions, and it entered a corrected judgment reflecting Defendant's sentencing range without conducting a new sentencing hearing. The State responds that the trial court acted within its discretion, and that there was no error by filing the corrected judgments without having a new sentencing hearing.

Appellate review of sentencing is under the abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 708 (2012); *see also State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). A finding of an abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id.*; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). In the context of sentencing, as long as the trial court places the sentence within the appropriate range and properly applies the purposes and principles of the Sentencing Act, this court must presume the sentence to be reasonable. *Bise*, 380 S.W.3d at 704-07. As the *Bise* court stated, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 708. The defendant bears "the burden of showing that the sentence is improper." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

It is clear that the trial court considered the sentencing law and principles. The record reflects that the trial court considered and weighed enhancement and mitigating factors in arriving at its decision and recited the relevant factors to its decision. Accordingly, the trial court's decision is entitled to a presumption of reasonableness. In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c).

Although the trial court should consider enhancement and mitigating factors, the statutory enhancement and mitigating factors are advisory only. *See* T.C.A. § 40-35-113, -114; *see also Bise*, 380 S.W.3d at 699 n.33, 704; *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008). "[A] trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." *Id*. at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *Id*. at 343. "[Appellate courts are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Id*. at 346.

Based upon his prior convictions, the trial court initially determined that Defendant should be sentenced as a career offender for each conviction. A Range III sentence for the Class C felony of aggravated burglary is between 10 and 15 years, and for the Class D felony of theft, between 8 and 12 years. T.C.A. § 40-35-112(c)(3), (4).

The trial court properly considered the evidence offered by the parties and stated on the record what enhancement and mitigating factors were considered and how much weight they were afforded. The court also complied with the purposes and principles of sentencing and imposed a within range sentence. Thus, the trial court did not abuse its discretion in enhancing Defendant's sentence and sentencing him to the maximum sentence of 15 years as a Range III offender for the Class C felony aggravated burglary

and to a concurrent maximum sentence of 12 years as a Range III offender for the Class D felony offense of theft of property valued at $1,000 or more but less than $10,000. Defendant is not entitled to relief as to his challenge to the length of the sentences.

Defendant also contends that the trial court erred by entering corrected judgments modifying his offender status from career offender to persistent offender without conducting a new sentencing hearing. As stated above, the original judgment forms indicate that Defendant was sentenced as a career offender with a 60 percent release eligibility for both offenses. In his amended motion for new trial, Defendant asserted that "[t]he trial court erred when it found the Defendant to be a career offender." Defendant argued that the trial court miscalculated the number of Defendant's prior convictions and that "[a]t most, the Defendant is a Range III Persistent Offender." At the outset of the hearing on Defendant's motion for new trial, as amended, the trial court ordered that although the sentence length for each conviction would remain the same, the sentencing status for each conviction would be changed to Range III persistent offender, with a 45 percent release eligibility.

Eight convictions were submitted by the State in support of its assertion that Defendant should be sentenced as a Range III career offender. Judgments of the convictions were admitted as evidence. None of the judgments indicate the date of the criminal offense. The Tennessee Board of Probation and Parole Investigation Report, commonly referred to as the pre-sentence report, was also submitted as an exhibit by the State. It was prepared by Mr. Gabbert, who testified for the State at the sentencing hearing. In the "prior record" section of the presentence report, the date of the jury verdict or the date of the guilty plea was listed as both the "offense date" and the "disposition date." Obviously, that information cannot be accurate, and since it happened in the listing of eight separate convictions, they are likely not the result of typographical errors. It is puzzling why the designation of "offense date" could not be labeled as "unknown" if in fact the preparer cannot find the date of the offense in an arrest warrant, indictment, or other document in the possession of the applicable trial court clerk. The eight convictions are as follows:

| Conviction Offense | County & Docket # | Felony Class per T.C.A. 40-35-118 | Date of Judgment |
|---|---|---|---|
| Kidnapping | Overton County, #1229 | C | 7/19/84 |
| Assault with Intent to Commit Robbery without a Deadly Weapon | Overton County, #1229 | D | 7/19/84 |

- 10 -

| | | | |
|---|---|---|---|
| Kidnapping | DeKalb County, #6765F, Count 4 | C | 8/12/83 |
| Kidnapping | DeKalb County, #6765F, Count 3 | C | 8/12/83 |
| Grand Larceny | DeKalb County, #6765F, Count 2 | D | 8/12/83 |
| Sale of Marijuana | DeKalb County, #6499F | E | 1/23/81 |
| Sale of Marijuana | DeKalb County, #6505F | E | 1/23/81 |
| First Degree Burglary | DeKalb County, #6510F | C | 1/23/81 |

Aggravated burglary is a Class C felony. T.C.A. § 39-14-403(b). Theft of property valued at $1,000 or more, but less than $10,000 is a Class D felony. T.C.A. § 39-14-105(a)(3).

If a defendant's conviction for which he is being sentenced is a Class C felony, in order to be sentenced as a Range III career offender, the defendant must have any combination of six or more prior Class A, B, or C felony convictions. As noted from the above chart, Defendant has only four Class C felony convictions and no convictions for Class A or B felonies. Therefore, he could not be sentenced as a Range III career offender for aggravated burglary. As applicable to Defendant's sentencing as a Range III persistent offender for aggravated burglary, he must have five or more prior felony convictions that are Class A, B, C, D, or E felonies. T.C.A. § 40-35-107.

From a review of the sentencing hearing, it appears that the trial court concluded that the two sales of marijuana offenses and the first degree burglary offense which led to convictions in DeKalb County on January 23, 1981, all occurred within a 24-hour period. This is important because in both the statute defining a persistent offender, T.C.A. § 40-35-107, and the statute defining a career offender, T.C.A. § 40-35-108, the following language is included:

> (4) Except for convictions for which the *statutory elements* include serious bodily injury, bodily injury, threatened serious bodily injury or threatened bodily injury to the victim or victims or convictions for the offense of aggravated burglary under § 39-14-403, convictions for multiple felonies committed within the same twenty-four-hour period

constitute (1) conviction for the purpose of determining prior convictions.

T.C.A. §§ 40-35-107(a)(4), -108(a)(4).

There is nothing in the record to conclusively show that the two offenses in Overton County case number 1229 were committed within a 24-hour period, so the trial court's counting these convictions as two convictions, even though they were charged in the same indictment, is not error. The same is true for the convictions in DeKalb County case number 6765F. However, we note that the trial court and the State, in order to show an element of "threatened bodily injury," erroneously relied upon the current statutory definition of kidnapping found in T.C.A. § 39-13-303(a): "Kidnapping is false imprisonment as defined in § 39-13-302, under circumstances exposing the other person to substantial risk of bodily injury." T.C.A. § 39-13-302(a) defines false imprisonment as: "A person commits the offense of false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." Defendant made the same error and argued that the current statute did not contain an element *threatening* bodily injury, but instead contained an element "exposing" a risk of bodily injury.

Defendant was convicted of kidnappings in 1983 and 1984, and the elements of the offense at the time he committed them is controlling. At the time of the convictions, as to the offense of kidnapping, the statute provided,

> Any person who forcibly or unlawfully confines, inveigles, or entices away another, with the intent to cause him to be secretly confined, or imprisoned against his will, or to be sent out of the state against his will, must, on conviction, be imprisoned in the penitentiary for not less than two (2) years nor more than (10) years.

T.C.A. § 39-2-302 (1982 Rplc.).

We have found no cases that define "forcibly" as it would apply to Defendant's kidnapping convictions. However, since there is nothing in the record to indicate that the offenses in Overton County case number 1229 and DeKalb County case number 6765F occurred within a 24-hour period, consideration of the elements of the offenses is not necessary.

In order to be sentenced as a persistent Range III offender for the Class C felony of aggravated burglary, Defendant must have at least five prior felony convictions of any class. T.C.A. § 40-35-107(a)(1). The trial court concluded that Defendant had 3 prior

- 12 -

kidnapping convictions, and the assault with intent to commit robbery conviction, plus a "stand alone" grand larceny conviction in 1983, and one prior conviction for two sales of marijuana convictions and the first degree burglary conviction that the trial court determined occurred within a 24-hour period, for a total of six convictions. Defendant only contested the trial court's refusal to treat the kidnapping convictions as only one prior conviction. Defendant has at least five prior felony convictions, and thus was properly sentenced as a persistent offender for aggravated burglary.

From reading the State's brief, it appears the State thought the two convictions on appeal were actually merged by the trial court and that Defendant only stands convicted of one count of aggravated burglary. However, as noted above, the two judgments reflect a conviction of aggravated burglary and a conviction of Class D felony theft, also sentenced as a Range III persistent offender to 12 years. The trial court's calculation of Defendant's prior felonies could have justified sentencing as a career offender for the Class D felony theft, but the State did not acknowledge the separate theft conviction, much less argue error by the trial court in setting Defendant's sentencing status as a persistent offender rather than a career offender. That issue is waived by the State. Furthermore the transcript indicates the trial court declined to order consecutive sentencing based upon the erroneous conclusion, also made by the State in the trial court, that theft is a lesser included offense of aggravated burglary. The State did not argue that the trial court should have ordered consecutive sentencing, and thus any relief to the State on the sentencing issues is waived. We decline to exercise our discretion to review the issues for plain error.

We disagree with Defendant's argument on appeal that he should have received a new sentencing hearing. At the hearing on Defendant's motion for new trial, the trial court stated:

> [I]n looking at the enhancement factors, and considering . . . the evidence at trial, and the presentence report, and the principles of sentencing, and arguments, and the nature[ ] and the characteristics of this criminal conduct, mitigating and statutory enhancement factors, and any . . . statement from the defense on his part, and the potential rehabilitation and treatment, I considered all of those things and looked through those. And, so certainly from an enhancement standpoint, the prior criminal history is something that weighs against [Defendant].

The court placed "great weight" on Defendant's extensive criminal history and that his criminal history "outweighs the mitigating factors." The court concluded, "I'm going to reduce it down to a persistent, but based on those enhancement factors, and the mitigating factors getting so little weight, I am going to give you 15 years. The 15-year

sentence is not going to change, but what is going to change is, your classification is going to be a 45 percent, not a 60 percent." Of course, even though the trial court erroneously concluded in court that the two convictions had to merge, they were ultimately not merged in the judgments and Defendant was also sentenced to 12 years as a Range III persistent offender for his theft conviction.

Having already concluded that the trial court properly considered the purposes and principles of sentencing and imposed a within-range sentence, we conclude that the trial court did not err by not conducting a new sentencing hearing before entering a corrected judgment reflecting the appropriate offender status. In effect, the trial court at the sentencing hearing conducted an analysis of the sentences as if Defendant was correctly being sentenced as a persistent offender, but then erroneously concluded that Defendant was a career offender. Defendant is not entitled to relief on his issue pertaining to his sentencing.

*Defendant's objection to the order of State's witnesses*

Defendant contends that the trial court erred by overruling his objection to the order of the State's witness. Specifically, Defendant contends that allowing Detective Patrick to testify after hearing the testimony of other State's witnesses violated the rule of sequestration of witnesses.

At trial, the State called as its first witness Jon Walls. Defense counsel objected "to the order of the witnesses." The trial court responded, "[a]nd the objection is, I guess, based on the fact that you have a prosecutor that's been designated as a witness?" Defense counsel replied, "[t]hat's correct, Judge." The trial court ruled, "I'll note the objection, but I overrule it."

We conclude that there was no violation of the sequestration rule because the State had the right under Tennessee Rule of Evidence 615 to designate Detective Patrick, as an investigating officer, exempt from sequestration. As such, Detective Patrick was allowed to remain in the courtroom during the testimony of other witnesses, unless there was a compelling reason for the trial court, in the exercise of its sound discretion, to exclude him. Tenn. R. Evid. 615; *State v. Jordan*, 325 S.W.3d 1, 40 (Tenn. 2010).

Rule 615 of the Tennessee Rules of Evidence governs the exclusion of witnesses during a trial or hearing:

> At the request of a party the court shall order witnesses, including rebuttal witnesses, excluded at trial or other adjudicatory hearing. In the court's discretion, the requested sequestration may be effective before

- 14 -

voir dire, but in any event shall be effective before opening statements. The court shall order all persons not to disclose by any means to excluded witnesses any live trial testimony or exhibits created in the courtroom by a witness. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) a person designated by counsel for a party that is not a natural person, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause. This rule does not forbid testimony of a witness called at the rebuttal stage of a hearing if, in the court's discretion, counsel is genuinely surprised and demonstrates a need for rebuttal testimony from an unsequestered witness.

Tenn. R. Evid. 615.

Recently, a panel of this court clarified the case law surrounding the issue of sequestration of prosecuting witnesses and held, based on *Jordan*, that "Rule 615, as amended in 1997, supplanted the condition from *Mothershed v. State*, 578 S.W.2d 96 (Tenn. Crim. App. 1978), and *Smartt v. State*, 112 Tenn. 539, 80 S.W. 586 (1904), that the prosecutor should be required to testify first or to be sequestered." *State v. Randall T. Beaty*, No. M2014-00130-CCA-R3-CD, 2016 WL 3752968, at *20 (Tenn. Crim. App., July 8, 2016). Defendant is not entitled to relief on this issue.

*Impeachment by prior convictions*

Defendant contends that the trial court erred by ruling that the State would be allowed to impeach him using prior convictions if Defendant testified.

Tennessee Rule of Evidence 609(a) provides that a witness may be impeached by evidence of a prior conviction. However, the prior conviction must be a felony conviction or a conviction of an offense involving dishonesty or a false statement. Tenn. R. Evid. 609(a)(2). Upon request, the trial court must determine that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues. *Id*. The rule also mandates that the State give reasonable written notice prior to trial of the particular convictions it intends to use to impeach the accused. Tenn. R. Evid. 609(a)(3). The Tennessee Supreme Court has noted that the following two criteria are especially relevant in balancing a prior conviction's probative value and unfair prejudicial effect: (1) the impeaching conviction's relevance as to credibility; and (2) the impeaching conviction's similarity to the charged offense. *State v. Waller*, 118 S.W.3d 368, 371 (Tenn. 2003).

When an impeaching conviction is substantially similar to the charged offense, a danger exists that jurors will improperly consider the impeaching conviction as evidence of the propensity of the defendant to commit the crime. *Id*. Accordingly, the unfair prejudicial effect of an impeaching conviction on the substantive issues greatly increases if the conviction is substantially similar to the charged offense. *Id*. Under these circumstances, a trial court should carefully balance the impeaching conviction's relevance with regard to credibility against its unfair prejudicial effect on substantive issues. *Id*.

Evidence of a prior conviction that is substantially similar to the charged offense is not, however, per se inadmissible for impeachment purposes. *Id*. "The standard is not whether there is any prejudice by allowing the State to use the prior conviction for impeachment, but whether the possible prejudice is outweighed by the probative value of the evidence as to the defendant's credibility as a witness." *State v. Roberts*, 943 S.W.2d 403, 408 (Tenn. Crim. App. 1996), *overruled on other grounds by State v. Ralph*, 6 S.W.3d 251 (Tenn. 1999). The courts of this State have repeatedly held that robbery and theft are crimes of dishonesty, "thus lending greater weight to their probative value regarding credibility." *State v. Lamario Sumner*, No. W2005-00122-CCA-R3-CD, 2006 WL 44377, at *5 (Tenn. Crim. App., Jan. 6, 2006) *perm. app. denied* (Tenn. May 30, 2006) (quoting *State v. Blevins*, 968 S.W.2d 888, 893 (Tenn. Crim. App. 1997)).

On appellate review, the trial court's rulings on the admissibility of prior convictions for impeachment purposes are subject to reversal only for an abuse of discretion. *State v. Thompson*, 36 S.W.3d 102, 110 (Tenn. Crim. App. 2000). A trial court abuses its discretion when it applies an incorrect legal standard or reaches a decision which stands against logic or reasoning that causes an injustice to the complaining party. *Waller*, 118 S.W.3d at 371.

In the present case, the State properly filed written notice before the trial of its intent to use two prior theft convictions from 2008 and 2012 for impeachment purposes. At trial, Defendant objected to the State's use of the prior convictions for impeachment purposes on the basis that "it's unfair and overly prejudicial to introduce proof of prior theft convictions." The trial court ruled that the two prior theft convictions were "highly probative [of] credibility." The trial court further stated, "I think we all agree that it is, that any[ ]time there's a crime of dishonesty, such as theft, probably, in this Court's opinion, I don't know what other crime is more probative to truthfulness, other than maybe a perjury crime. So, it is highly probative." The trial court recognized that the prior convictions were similar in nature to the offenses for which Defendant was on trial, but the trial court concluded that the probative value was not outweighed by the danger of unfair prejudice.

We conclude that the trial court did not abuse its discretion by ruling that Defendant's prior convictions were admissible. The trial court determined, and we agree, that Defendant's credibility was at issue and that Defendant's prior convictions were highly probative as to Defendant's credibility. We also agree with the trial court that the probative value of the convictions was not outweighed by the danger of unfair prejudice. We discern no abuse of discretion by the trial court in concluding that the State could impeach the Defendant with prior crimes of dishonesty. Accordingly, the Defendant is entitled to not relief on this issue.

## CONCLUSION

Based on the foregoing, we affirm the judgments of the trial court.

_____
THOMAS T. WOODALL, PRESIDING JUDGE