IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 6, 2018

**SCOTT L. BISHOP v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Madison County**
**No. C-16-71  Donald H. Allen, Judge**

_____

**No. W2017-00709-CCA-R3-PC**

_____

The Petitioner, Scott L. Bishop, was convicted of four counts of aggravated sexual battery and sentenced to serve eleven years in prison.  The Petitioner filed a post-conviction petition asserting that his trial counsel did not provide effective assistance, and the post-conviction court denied the petition after a hearing.  On appeal, the Petitioner asserts that trial counsel was deficient in failing to present character witnesses, failing to object to leading questions asked by the prosecutor, and preventing him from viewing the victim's recorded forensic interview.  After a thorough review of the record, we conclude that the Petitioner is not entitled to relief, and we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and J. ROSS DYER, JJ., joined.

George Morton Googe, District Public Defender, and Gregory D. Gookin, Assistant District Public Defender, for the appellant, Scott L. Bishop.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Jody Pickens, District Attorney General; and Al Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

**Trial**

At trial, the nine-year-old victim of the crimes testified that the Petitioner "'touched [her] privates,'" which she specified was the area between her legs, on four consecutive nights in December 2011. *State v. Scott L. Bishop*, No. W2014-01540-CCA-R3-CD, 2015 WL 6859780, at *1 (Tenn. Crim. App. Nov. 6, 2015), *no perm. app. filed*. The Petitioner was in a romantic relationship with the victim's mother, and he had been living with the victim and her mother for a number of months. *Id.* The victim testified that on the fourth night the Petitioner assaulted her, her mother walked into the room, and the Petitioner then left the home. *Id.* at *2.

The victim's mother confirmed that on December 15, 2011, the victim and the Petitioner were lying under a blanket in the living room watching television, and when the victim's mother looked in the room, she "observed the Defendant jerk his arm away from the area of [the victim]'s vagina 'like he'd touched fire.'" *Id.* The victim's mother made the Petitioner leave the home but did not report the crimes. *Id.* The victim's grandmother took the Petitioner's belongings to his work the next day without knowing why the victim's mother wanted him to move out. *Id.* The victim's grandmother became aware of the offenses shortly thereafter, but she did not report the crimes at the time she became aware of them. *Id.* The offenses came to light when the victim's mother sought financial assistance with her bills due to the abrupt decline in income brought about by the Petitioner's departure from the home. *Id.* at *2-3. The victim's grandmother revealed the abuse to relief ministry personnel in frustration after the victim's mother was told she would probably be denied assistance. *Id.* The victim's grandmother also testified that in March 2012, she went to the place where the Petitioner was employed as a mechanic, waited for him to get under her car, and then "'stomped his privates.'" *Id.* at *3.

The Petitioner attempted to show that the victim had been coached to testify against him. The victim acknowledged that she had practiced her testimony, but she indicated that she meant only that she had spoken about the abuse with different people. *Id.* at *2. The victim's grandmother likewise acknowledged that she took the victim to Mr. Jessee Whitnall, a teaching assistant at the victim's school, and asked the victim to tell him about the abuse. *Id.* at *3. Mr. Whitnall testified that the victim's grandmother told the victim to tell about the abuse as they had "'rehearsed.'" *Id.* Mr. Whitnall said that the victim's grandmother then told him that the victim needed "'to practice on somebody else.'" *Id.*

The Petitioner testified at trial that he did not touch the victim inappropriately. *Id.* at *4. He asserted that the victim's mother was angry because the Petitioner was addicted to pain medication and was spending his money on pills. *Id.* He did not know that he was accused of touching the victim until March 2012, when he was interviewed by police. *Id.* The Petitioner said that the victim and her mother came to his new residence with some of his personal property approximately two weeks after he moved out. *Id.* He

also testified that the victim's grandmother came to his work in January 2012 in an attempt to revive the relationship between the Petitioner and the victim's mother and that she did not come to his work in March. *Id.*

Mr. Kenneth Lilly, the Petitioner's employer, testified that the victim's grandmother came to the Petitioner's workplace in mid-December 2011 and in January 2012. *Id.* Mr. Lilly acknowledged that on one of those occasions, the victim's grandmother kicked the Petitioner. *Id.*

The jury convicted the Petitioner of four counts of aggravated sexual battery. The Petitioner was represented by new counsel at sentencing, the motion for a new trial, and on appeal. At sentencing, the victim's grandmother described the adverse effects that the abuse had on the victim. *Id.* Petitioner's appellate counsel introduced the testimony of numerous character witnesses:

> Brad York of the Jackson Police Department testified that he had a second job driving a truck one day a week. He had his truck serviced at the Poplar Corner Exxon, where the Defendant worked. Officer York reported that he visited the station "[a]t least once or twice a week" and that he had known the Defendant for at least a year before the Defendant was incarcerated. He described the Defendant as an honest, "great person" and noted that, when the Defendant repaired his truck, he never had to take it back to be repaired a second time.

> Bobbie Bishop, the Defendant's aunt, testified that the Defendant had lived with her after he moved out of [the victim's] mother's house. She stated that he was helpful around the house and appreciative of her family's support. She had never witnessed the Defendant behave violently and stated that she was comfortable with the Defendant living in the home with her adult daughter. She never witnessed him act inappropriately toward children or adult women. She stated that the Defendant was welcome to live with her when he was released.

> Tiffany Nadig, the Defendant's girlfriend, testified that the Defendant was a caring and honest person. She reported that the Defendant had informed her of the charges against him on their first date, but she stated that she was not concerned about the Defendant being around her three young children. She had never known the Defendant to do anything "sexually depraved."

Mr. Lilly testified that he owned the Poplar Corner Exxon where the Defendant was employed as a mechanic for approximately two years before his incarceration on the instant charges. Mr. Lilly knew the Defendant struggled with drugs, but he described the Defendant as a good employee. The Defendant had good relationships with customers, and people would request him to fix their cars. He never knew the Defendant to be violent or noticed any sexually inappropriate behavior.

K.C. Lilly testified that he was Mr. Lilly's son and that he often had the Defendant repair his truck. He stated that the Defendant was a "good guy," was honest with customers, and did good work.

Nathan Bishop, the Defendant's uncle, testified that he was aware the Defendant struggled with pills and alcohol, although he had never seen the Defendant under the influence. Prior to coming to live with Mr. Bishop and his wife, the Defendant completed a voluntary, outpatient treatment program. During the time the Defendant lived with Mr. Bishop, he helped clear trees and mow lawns on their fifteen-acre property. Mr. Bishop reported that he had never seen the Defendant behave in a violent manner or exhibit inappropriate sexual behavior.

Kyle Dewberry, a customer at the Poplar Corner Exxon, testified that the Defendant was his "personal mechanic." He did not interact with the Defendant outside of the garage, but he described the Defendant as a friend because they would chat while Mr. Dewberry waited on his car. He said he liked the Defendant and had never observed the Defendant behave violently or in a way that may have been criminal or abnormal.

Mr. Whitnall testified that he had an "excellent" relationship with the Defendant while the Defendant worked for him. He described the Defendant as "a brutally honest and very helpful person." He had never seen the Defendant exhibit any violent behaviors. Mr. Whitnall stated that he started working at [the victim's] school after he retired and that he did not notice anything unusual about the victim's behavior in 2011-2012.

*Id.* at *4-5.

The trial court sentenced the Petitioner to serve eleven years for each conviction and aligned the sentences concurrently. *Id.* at *6. The convictions and sentences were affirmed on direct appeal. *Id.* at *1.

- 4 -

## Post-Conviction

The Petitioner filed a timely post-conviction petition alleging numerous grounds for relief. On appeal, the Petitioner argues that counsel provided ineffective assistance by failing to present character witnesses at trial, failing to object to leading questions, and failing to develop a defense strategy by refusing to allow the Petitioner to view the victim's recorded forensic interview. We will accordingly limit our summary of the proof at the hearing to these three grounds.

The Petitioner testified that he retained trial counsel after he was indicted. He met with trial counsel approximately four times and reviewed discovery. The Petitioner alleged that trial counsel failed to develop a strategy, and he elaborated that trial counsel did not discuss with him what trial counsel would ask the witnesses. The Petitioner testified that trial counsel failed to interview the witnesses listed on the indictment, including the victim, her mother, and her grandmother. The Petitioner also asserted that trial counsel did not interview Mr. Whitnall or Mr. Lilly, both of whom testified at trial, and that trial counsel could have "had a better strategy" if he had interviewed the witnesses. Trial counsel told the Petitioner that he could not call character witnesses at trial but only at sentencing, and accordingly, none of the Petitioner's character witnesses were called at trial.

The Petitioner also asserted that trial counsel was deficient in failing to object to leading questions which the prosecutor asked the nine-year-old victim. The Petitioner alleged that trial counsel did not allow the Petitioner to see the victim's recorded forensic interview at the Child Advocacy Center. The Petitioner further stated that trial counsel had told him that the Child Advocacy Center conducted a second interview with the victim but that trial counsel was unable to obtain it. Trial counsel did not file a motion to dismiss based on the loss or destruction of evidence related to this second interview.

Trial counsel testified that he was hired by the Petitioner after the preliminary hearing and indictment. They met multiple times to discuss witnesses. Trial counsel interviewed the Petitioner's witnesses, including Mr. Whitnall and Mr. Lilly. He attempted to contact the victim's mother and grandmother, but they did not want to speak to trial counsel and did not permit him to speak to the victim.

Trial counsel received a copy of the victim's recorded interview and reviewed it. He testified that, after listening to the Petitioner's testimony, he recalled "some issue regarding a second interview" but could not recall anything else. Trial counsel reviewed the State's file as part of discovery. He agreed that the second interview he discussed with the Petitioner might have been an interview that the prosecutor conducted with the victim, which was referenced in the State's file.

Trial counsel testified that the defense strategy was to assert that the victim's mother and grandmother had coached her to accuse the Petitioner because they were angry about his addiction. Trial counsel introduced proof that the crime was initially not reported by the victim's mother or grandmother. The Petitioner asserted his innocence and did not want to plead guilty to the charged offenses or any lesser offenses. Trial counsel discussed the possibility of introducing character witnesses with the Petitioner, but trial counsel felt they would not be helpful at trial. Instead, trial counsel introduced the testimony of Mr. Whitnall that the victim was rehearsing her testimony and the testimony of Mr. Lilly that the victim's grandmother had assaulted the Petitioner.

The post-conviction court denied relief. The court generally stated that it credited trial counsel's testimony, and it found that there was only one recorded interview of the victim. The post-conviction court found that trial counsel's conduct was not deficient in any respect and that the Petitioner had not demonstrated any prejudice from the alleged errors.

## ANALYSIS

On appeal, the Petitioner argues that trial counsel was deficient in three respects: failing to introduce character witnesses, failing to object to leading questions, and refusing to allow him to view the victim's forensic interview.

Post-conviction relief is available when a conviction or sentence is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. The petitioner bears the burden of proving the allegations of fact in the petition by clear and convincing evidence. T.C.A. § 40-30-110(f). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)).

The findings of fact made by a post-conviction court are conclusive on appellate review unless the evidence preponderates against them. *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010). "The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness." *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006).

Under the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution, the accused is guaranteed the right to effective assistance of counsel. *Moore v. State*, 485 S.W.3d 411, 418 (Tenn. 2016). In order to establish that he was denied his constitutional right to effective assistance of counsel, a petitioner must

show both that counsel's performance was deficient and that the deficient performance caused prejudice to the defense. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). A claim may be denied for failure to establish either deficiency or prejudice, and the reviewing court need not address both components if a petitioner has failed to establish one. *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

"Establishing deficient performance requires showing 'that counsel's representation fell below an objective standard of reasonableness,' which standard is measured by 'professional norms' prevailing at the time of the representation." *Garcia v. State*, 425 S.W.3d 248, 256-57 (Tenn. 2013) (quoting *Strickland,* 466 U.S. at 688). As long as counsel's representation was "'within the range of competence demanded of attorneys in criminal cases,'" counsel will not be deemed to have performed deficiently. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). Deficient performance requires a showing of "'errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Id.* (quoting *Strickland,* 466 U.S. at 687).

The reviewing court should not second-guess strategic choices or measure counsel's performance by "'20-20 hindsight.'" *Id.* at 277 (quoting *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982)). In reviewing counsel's professional decisions, a "'fair assessment … requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Goad*, 938 S.W.2d at 369 (quoting *Strickland*, 466 U.S. at 689). "'[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Felts*, 354 S.W.3d at 277 (quoting *Strickland*, 466 U.S. at 690-91). The failure of a particular strategy does not establish unreasonable representation. *Cauthern v. State*, 145 S.W.3d 571, 600 (Tenn. Crim. App. 2004). "Deference to counsel's tactical choices, however, applies only if such choices are within the range of competence required of attorneys in criminal cases." *Carpenter v. State*, 126 S.W.3d 879, 887 (Tenn. 2004).

In determining prejudice, the reviewing court must decide if there is "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Calvert v. State*, 342 S.W.3d 477, 486 (Tenn. 2011) (quoting *Strickland*, 466 U.S. at 694). A reasonable probability is "'a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

Although the Petitioner testified that trial counsel did not interview witnesses before trial, trial counsel testified that he interviewed the Petitioner's witnesses and that he and the Petitioner discussed presenting character witnesses. Trial counsel testified that he made a strategic decision not to call the character witnesses because he "didn't feel that they were helpful at the trial stage." Appellate counsel presented eight character witnesses on the Petitioner's behalf at sentencing, including Mr. Whitnall and Mr. Lilly, both of whom testified at trial. These witnesses generally described the Petitioner as honest and as a good mechanic, and none of the witnesses had seen the Petitioner act violently or inappropriately. *Scott L. Bishop*, 2015 WL 6859780, at *4-5. However, the post-conviction court credited trial counsel's testimony that he investigated the witnesses and chose not to call them. Accordingly, the Petitioner has not demonstrated that trial counsel performed deficiently. *See Raymond Writer v. State*, No. E2006-00770-CCA-R3-PC, 2007 WL 763223, at *11 (Tenn. Crim. App. Mar. 14, 2007) (concluding that decision not to use character witnesses was an informed and strategic one). Nor has the Petitioner shown that testimony demonstrating that he was honest and skillful at his profession would have resulted in a reasonable probability of the jury disbelieving the victim's testimony that he touched her inappropriately on four occasions and her mother's testimony that the Petitioner appeared to be touching the victim's vaginal area. He is not entitled to relief.

The Petitioner next contends that trial counsel performed deficiently when he failed to object to leading questions. The Petitioner does not cite to any particular question which he contends was improper, and he does not articulate how objecting to the questions would have resulted in a reasonable probability of acquittal. At the hearing, the Petitioner testified that the improper questions were ones calling for a "yes or no" response from the victim. The fact that a question calls for a "yes or no" answer "is not sufficient to make the question 'leading.'" *Mothershed v. State*, 578 S.W.2d 96, 99 (Tenn. Crim. App. 1978) *superseded by rule on other grounds as stated in State v. Randall T. Beaty*, No. M2014-00130-CCA-R3-CD, 2016 WL 3752968, at *20 (Tenn. Crim. App. July 8, 2016), *perm. app. granted* (Tenn. Oct. 19, 2016). This court on direct review concluded that no improper questions were asked because the prosecutor's questions were "in no way suggestive" and were necessary to develop the child victim's testimony. *Scott L. Bishop*, 2015 WL 6859780, at *11 (citing *State v. Jonathan Ray Swanner,* No. E2010-00956-CCA-R3-CD, 2011 WL 5560637, at *6 (Tenn. Crim. App. Nov. 14, 2011)). Accordingly, the Petitioner cannot demonstrate that trial counsel was deficient in not objecting to the questions or that any objection would have resulted in the reasonable probability of an acquittal.

The Petitioner next asserts that trial counsel was unable to formulate a defense because trial counsel did not permit the Petitioner to view the victim's forensic interview

with the Child Advocacy Center. However, the Petitioner makes no specific allegation regarding how viewing the victim's interview would have affected his trial strategy. Trial counsel testified that the victim's trial testimony was consistent with her forensic interview and that she made a very strong witness. Trial counsel also testified that he thoroughly reviewed the victim's forensic interview, and the post-conviction court made a finding generally accrediting trial counsel's testimony. Accordingly, the Petitioner has not demonstrated any prejudice, and he is not entitled to relief.

## CONCLUSION

Based on the foregoing, the Petitioner is not entitled to post-conviction relief, and the judgment of the post-conviction court is affirmed.


_____
JOHN EVERETT WILLIAMS, JUDGE